523 P.2d 544

Clara **ALVAREZ**, Plaintiff-Appellant,

v.

**SOUTHWESTERN LIFE INSURANCE COMPANY, INC.**, Defendant-Appellee.

No. 9819.

Supreme Court of New Mexico.

June 14, 1974.

Easley, Reynolds & Cox, Hobbs, for appellant.

Rose & Johnson, Hobbs, for appellee.

## OPINION

STEPHENSON, Justice.

This appeal arises out of a suit brought in the District Court of Lea County to recover on an insurance policy issued to plaintiff-appellant's deceased husband, Abel Alvarez, by defendant-appellee, Southwestern Life Insurance Company (Southwestern). Southwestern moved for, and was granted, summary judgment. This appeal followed. We affirm.

Appellant's decedent, Abel Alvarez, was an employee of Watson's Truck and Supply of Hobbs. The employees of that company were insured under a group policy issued by Southwestern which provided coverage to Mr. Alvarez in the sum of $4,000.00 for life insurance, disability and accidental death and dismemberment benefits. On December 23, 1969 while the poli-

cy was in force Mr. Alvarez sustained injuries in an accident which totally disabled him and led to his death on January 13, 1970. The group policy was cancelled effective December 31, 1969, at the request of Mr. Alvarez' employer. As the chronology indicates, the policy was cancelled after Mr. Alvarez sustained his injuries but before his death.

Section 11 of the policy, labeled "Disability Benefit" provided in part:

"(2). Benefit
* * * [B]enefits will be provided
* * *

(1) If an employee dies not later than one year after the date premium payments for his insurance have been discontinued and if Southwestern receives proof that (a) the employee became totally disabled while insured under this policy * * * and (b) such disability existed continuously until the date of his death."

The benefit payable under Section 11 was "the amount of Life Insurance for which he (the insured) would have been insured under this policy * * * *".

Since the accident which led to Mr. Alvarez' death occurred while the policy was in effect and he was totally and continuously disabled until his death, the disability coverage in Section 11 became operative to provide a disability benefit in the amount of $4,000.00. Southwestern paid this amount to appellant.

This suit was brought to recover accidental death and dismemberment benefits under Section 12 of the policy. Section 12, captioned "Accidental Death And Dismemberment Benefits For Employees" in pertinent part provided:

"If an employee, while insured for benefits under this policy, suffers any one of the losses specified in the following Schedule of Losses and Benefits as a direct result of bodily injuries effected solely and independently of all other causes through external, violent, and accidental means and within 90 days after the accident which caused such loss,

Southwestern will pay the benefit set forth in such schedule."

One of the calamities insured against in the Schedule of Losses And Benefits was loss of life.

On motion for summary judgment, Southwestern contended that the critical event for which insurance coverage was provided under Section 12 was "loss of life" and not the occurrence of an accident which resulted in loss of life, and that since the policy had terminated on December 31, 1969, and Mr. Alvarez died on January 13, 1970, he was afforded no coverage under Section 12 of the policy at the time of his death. Southwestern further contended that subparagraph 5 of Section 11 clearly indicates that any possible liability incurred under one section of the policy precludes liability under another section. Subsection 5 of Section 11 reads as follows:

"(5) In no event will the provisions of this Section [11] apply to any Accidental Death and Dismemberment Benefits [Section 12] which may be provided by this policy and the amount of insurance referred to in this Section will, in no event, include any amount of Accidental Death and Dismemberment Principal Sum."

The trial court accepted Southwestern's legal arguments, holding that loss of life was the critical event insured against under Section 12, and that the policy was not ambiguous and does not provide for double payment.

As her first point on appeal, appellant argues that the contract is ambiguous, that resort must therefore be had to rules of construction and that under those rules, the policy must be construed against the insurance company and in favor of the insured.

■ In determining whether or not a policy provision is ambiguous, the following test is used:

"An ambiguity arises in the provision under consideration since it is fairly susceptible of two different constructions by reasonably intelligent men on reading it.

Reasonably intelligent men could honestly differ as to the meaning thereof." Houston Fire & Cas. Co. v. C And H Const. & Pav. Co., 82 N.M. 799, 487 P.2d 908 (1971).

Appellant argues that subsection 5 of Section 11 is ambiguous because it is just as susceptible to the meaning that accidental death benefits will be paid in addition to disability benefits as it is that disability benefits are paid in lieu of accidental death benefits. This presents a close question. Certainly the provision is not expressed as clearly as it might be. For example, nowhere is there any clearly expressed statement such as that the total benefits will in no event exceed $4,000.00, or that recovery of the disability benefit precludes recovery for accidental death. Rather subsection 5 says that the provisions of Section 11 do not "apply" to accidental death benefits. While this expression would preclude the application of the extended coverage provisions of Section 11 to the benefits provided under Section 12 (a key consideration as we shall see) it falls short of saying that benefits under both sections cannot be recovered.

Similarly, subsection 5 says that the amount of recovery under Section 11 will in no event "include" any amount for accidental death. To say that disability benefits shall not "include" accidental death benefits, is a different thing than saying that recovery of disability benefits "excludes" recovery of accidental death benefits. It could simply mean that each type of benefit must fall within the coverage of its own section in order to be recoverable.

■ We hold subsection 5 of Section 11 is in some respects ambiguous. It is not clear that recovery may not be had under both Sections 11 and 12, although it is clear that the extended coverage of Section 11 does not extend to 12. Certain clauses in a contract may be ambiguous, in which event they must be construed, but others which are clear will merely be applied. Walters v. Hastings, 84 N.M. 101, 500 P.2d 186 (1972).

Establishing the ambiguity of Section 5 is, however, merely the first hurdle for appellant. She must still show that her husband was provided coverage under Section 12 at the critical time. That is the subject of her second point on this appeal.

■ The crucial point fatal to appellant's position is that the conditions for coverage under Section 12 were not satisfied. The first sentence of Section 12 provides: "If an employee, while insured for benefits under this policy, \* \* \*". The policy terminated on December 31, 1969. The only coverage continuing after that date was the residual disability benefit provided under Section 11. Appellant has already recovered the benefit due under Section 11, and its extended coverage provisions do not apply to Section 12. There is nothing in the language of Section 12, in contrast to the language in Section 11, that would allow recovery for loss of life after the policy had terminated. We cannot rewrite the contract of the parties to mean something it does not say. Vargas v. Pacific National Life Assurance Company, 79 N.M. 152, 441 P.2d 50 (1968).

This is a case of first impression in New Mexico. Other jurisdictions have, however, construed insurance policies with similar limited coverage clauses. In Bartulis v. Metropolitan Life Insurance Company, 72 Ill.App.2d 267, 218 N.E.2d 225 (1966), an insured sought to recover for medical and hospitalization expenses incurred after the policy had terminated. The injury necessitating the medical expenses occurred while the policy was in force. The court said:

"It seems crystal clear that the coverage provided was for confinement as a patient in a hospital while the policy was in force and surgery performed while the policy was in force. Neither event occurred during the life of the policy. Neither in such provisions nor elsewhere in the policy is there language suggesting that the policy could or should be read as providing coverage for hospital-ization or surgery resulting from injuries sustained while the policy was in force. To so read the policy is to annex to it a coverage neither specifically stated nor reasonably implied. We would observe that Section 10 entitled 'Benefits after Cessation of Insurance' provided that if a certificate holder is totally disabled as a result of injuries or sickness on the termination date of the policy, the hospitalization and surgery coverages continue, for a period of 31 days \* \* \* It is thus apparent that this is not only a limited coverage policy, but its post-termination coverage is likewise specifically limited to specific circumstances. Coverage for injuries sustained during the lifetime of the policy with hospitalization or surgery resulting therefrom thereafter is conspicuous by its absence. The clear implication is that there was no intention to provide such coverage.

"We cannot agree with the plaintiff that liability arose when the injuries were sustained. The coverage was not for expense caused by injuries sustained during the life of the policy, but for the cost of hospitalization and surgery obtained during the life of the policy."

See also Hefner v. Metropolitan Life Insurance Company, 329 F.Supp. 356 (1971); Cohen v. Northwestern National Life Insurance Co., 124 Ill.App.2d 15, 259 N.E.2d 865 (1970); Daly v. Golden Rule Life Insurance Company, 95 Ill.App.2d 138, 237 N.E.2d 790 (1968).

Thus, even if subsection 5 of Section 11 is ambiguous and could be construed to allow a double recovery, the decedent's policy of insurance was terminated before he died, that being the event covered by Section 12.

Finding no error, the summary judgment is affirmed.

It is so ordered.

McMANUS, C. J., and OMAN, J., concur.