600 P.2d 850

ATLAS ASSURANCE COMPANY, LTD., and Pacific Coast Properties, Inc., a foreign corporation, Plaintiffs-Appellants,

v.

GENERAL BUILDERS, INC., a New Mexico Corporation, and Kenneth P. Thompson Company, Inc., a New Mexico Corporation, Defendants-Appellees.

No. 3737.

Court of Appeals of New Mexico.

Aug. 30, 1979.

Lawrence H. Hill, Civerolo, Hansen & Wolf, Albuquerque, for plaintiffs-appellants.

Terry D. Farmer, Nordhaus, Moses & Dunn, Albuquerque, for General Builders.

Roy F. Miller, Jr., Miller & Melton, Albuquerque, for Kenneth P. Thompson Co.

Michael P. Watkins, Oldaker & Oldaker, Albuquerque, for Kenneth P. Thompson Co.

## OPINION

LOPEZ, Judge.

Plaintiff-appellant, Atlas Assurance Company, Ltd., (Atlas), brought this subrogation action in the District Court of Bernalillo County against defendants-appellees, General Builders, Inc. (General Builders) and Kenneth P. Thompson Company, Inc. (Thompson), for monies paid to plaintiff-appellant, Pacific Coast Properties, Inc. (PCP). These monies were paid pursuant to an insurance policy issued by Atlas to PCP. Appellees' motion for summary judgment was granted and appellants appeal. We reverse and remand.

On December 21, 1973, PCP entered into a contract with General Builders for the construction of a shopping center in Portales, New Mexico. PCP was the owner of the project. Atlas issued an insurance policy to PCP on January 14, 1974, to cover property damage to the project. On May 3, 1974, another contract was executed between General Builders and PCP for the construction of an addition to the shopping center. On March 21, 1974, Thompson entered into a subcontract with General Builders for the masonry work on the project. During June of that year, winds blew down portions of the masonry walls on three occasions. Subsequently, PCP submitted proof of loss to Atlas, and Atlas paid PCP for the losses sustained. Thompson rebuilt the walls and was paid out of the insurance proceeds for the repair work.

On May 12, 1977, Atlas filed a complaint against General Builders and Thompson. Atlas's complaint alleged that the damage done to the masonry walls was caused by appellees' negligence, and it further claimed that Atlas, as insurer, was entitled to subrogation rights under the policy issued to PCP. Appellees answered alleging that they were co-insureds under the policy and that, consequently, Atlas could not subrogate against them. In granting appellees' motion for summary judgment, the trial court agreed with appellees' allegations. The issue on appeal is whether the court properly granted appellees' motion. In order to determine this issue, the question of whether appellees are co-insureds under the Atlas policy must be decided.

To decide this latter question, we must interpret those policy provisions which are pertinent to this issue. Accordingly, we are guided by the following principles of insurance law. An insurance policy is a contract and is generally governed by the law of contracts. The rights and duties of the parties are measured by what they intended, what they mutually agreed to and what their minds met upon. *Vargas v. Pacific National Life Assurance Company*, 79 N.M. 152, 441 P.2d 50 (1968); *Thompson v. Occidental Life Ins. Co. of Cal.*, 90 N.M. 620, 567 P.2d 62 (Ct.App.), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977). If it can be accomplished, the meaning of the contract must be ascertained from a consideration of the written policy itself. Extrinsic evidence is not admissible to determine the intent of the parties unless there is an uncertainty and ambiguity in the contract. *Hoge v. Farmers Market & Supply Co. of Las Cruces*, 61 N.M. 138, 296 P.2d 476 (1956); *see McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972).

In determining whether an uncertainty or ambiguity exists, the policy must be considered as a whole. *See Ivy Nelson Grain Co. v. Commercial U. Ins. Co. of N.Y.*, 80 N.M. 224, 453 P.2d 587 (1969). A single sentence or paragraph may not be selected as support for either the decision that a contract is clear and plain as to its meaning, or that it is uncertain, indefinite and ambiguous. *Hoge v. Farmers Market & Supply Co. of Las Cruces, supra.* In addition, words and terms must be read in the usual and ordinary sense, unless some different meaning is required. *Cain v. National Old Line Insurance Company*, 85 N.M. 697, 516 P.2d 668 (1973). Whether an ambiguity exists is a question of law to be decided by the court. *Thompson v. Occidental Life Ins. Co. of Cal., supra.* In determining this question, the test to be used is whether the policy provision is fairly susceptible of two different constructions by reasonably intelligent men. *Alvarez v. Southwestern Life*

*Insurance Co. Inc.*, 86 N.M. 300, 523 P.2d 544 (1974). However, resort will not be made to a strained construction for the purpose of creating an ambiguity when no ambiguity in fact exists. *Safeco Ins. Co. of America, Inc. v. McKenna*, 90 N.M. 516, 565 P.2d 1033 (1977).

 If an ambiguity exists in the policy, the general rule is that a liberal construction favorable to the insured should be adopted. *See Vargas v. Pacific National Life Assurance Company, supra; Thompson v. Occidental Life Ins. Co. of Cal., supra.* This general rule, however, operates only after the insured has been determined. It does not operate in deciding whether a certain entity belongs to the insured class described in the policy. Accordingly, a third person who is not a party to a contract of insurance usually is not entitled to a construction in his favor in determining whether that third person is an insured under the policy. *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32 (Tex. Civ.App.1974); 44 C.J.S. *Insurance* § 308, at 1226 (1945).

The insurance policy between Atlas and PCP contains the following provisions which are relevant in determining whether appellees are insureds under the policy:

(1) INSURED: Pacific Coast Properties, Inc. and/or any subsidiary and/or affiliated and/or associated entities as are now or may hereafter be constituted for account of whom it may concern. Loss, if any, to be adjusted with and payable as directed by NAMED INSURED.

(2) *PROPERTY COVERED*

 . . . . .

INDUSTRIAL & COMMERCIAL BUILDINGS

all of above while in course of construction, all materials while in transit and/or storage from points within the continental United States to the job site, and all when completed as provided herein, including foundations, additions, attachments and all other permanent fixtures belonging to and constituting part of or used in the service of said buildings or structures and all the property of the insured or for which the insured has assumed responsibility or is legally liable . . .

(3) *PERILS INSURED*

This policy insures against all risks of direct Physical Loss of or Damage to the insured property, except as hereinafter excluded.

(4) *EXTENSIONS OF COVERAGE*

 . . . . .

MATERIALS, EQUIPMENT AND SUPPLIES AND TEMPORARY STRUCTURES OF ALL KINDS INCIDENTAL TO THE CONSTRUCTION OF BUILDINGS AND STRUCTURES, AND SIMILAR PROPERTIES BELONGING TO OTHERS FOR WHICH THE INSURED IS LIABLE:

All while at the described location and forming part of or contained in said buildings or temporary structures or while in cars at the described location or within three hundred feet (300') thereof, or while in the open at such location, or when adjacent thereto on sidewalks, streets, or alleys.

(5) *PROPERTY NOT COVERED*—This policy does not insure: Contractor's [sic] or Sub-contractors' Tools and Equipment

Appellants interpret the above provisions to exclude appellees as insureds. More specifically, appellants contend *inter alia* that provision (4) covers only property owned by PCP and property for which PCP is liable. They claim that this provision is evidence that Atlas and PCP did not intend to extend coverage but intended instead to restrict coverage. Put another way, appellants assert that the phrase, "for which the insured is liable," applies both to the term "similar properties" and to the terms "materials, equipment and supplies and temporary structures." Appellants argue that any other interpretation would render pro-

vision (5) inoperative since contractor's or subcontractors' tools and equipment would not be excluded if the phrase, "for which the insured is liable," applied only to the term "similar properties." In addition, appellants argue that provision (5) is evidence that Atlas and PCP did not intend to include appellees as co-insureds.

Appellees interpret the above provisions to include themselves as insureds under the policy. They claim, among other things, that the terms in provision (1), "and/or any subsidiary and/or affiliated and/or associated entities," are broad enough under the present facts to include them as insureds. Additionally, they assert that the phrase, "loss, if any, to be adjusted with and payable as directed by named insured," contemplates more than one insured. Appellees further interpret provision (2) as providing coverage for one hundred percent of the property included in the various construction agreements between the parties. Based on this interpretation, appellees conclude that they are insureds under the policy. Appellees also contend that provision (5), since it clearly excludes only contractors' or subcontractors' tools and equipment, creates the implication that other property owned by such entities are included in the policy's coverage. Finally, appellees argue that the phrase, "for which the insured is liable," in provision (4) applies only to the term "similar properties" and that, consequently, the terms "materials, equipment and supplies and temporary structures" include appellees' property. Accordingly, appellees assert that they are insureds under the Atlas policy. Both appellants and appellees present other interpretations not only of the above provisions but also of other policy provisions to support their positions.

■ We do not agree that any ambiguity results from provision (4). This provision does no more than complement the coverage of provision (2). Provision (4) covers property of the insured not covered by provision (2) and covers similar properties of others for which the insured is liable. Consistent with these provisions, even if the insured is liable for property of others, there is no coverage for tools and equipment of contractors and subcontractors under provision (5). The distinction between the insured's property and property of others for which the insured is liable is borne out by other policy provisions dealing with valuation and adjustment of losses. Considering the policy as a whole, provision (4) is not a "general coverage" provision, and, therefore, *Transamerica Ins. Co. v. Gage Plumbing and Heating Co.*, 433 F.2d 1051 (10th Cir. 1970), is not applicable. There is no ambiguity in the coverage provisions which permits the introduction of extrinsic evidence to determine the intent of the parties concerning coverage.

■ However, there is an ambiguity in provision (1) as to the meaning of insured. What did the parties, i. e. Atlas and PCP, intend by the reference to subsidiary or affiliated and associated entities? Such an entity is an insured, and its property and property of others for which the entity is liable is covered under the policy for all risks of physical loss. In addition, this coverage, under the provision entitled Commencement and Duration of Risk, attaches "from the moment the insured property becomes at the risk of the insured . . . ." Atlas has charged a premium for insuring PCP and any such entities. Because provision (1) shows an intent to insure entities in addition to PCP and because this provision is ambiguous, we rule that extrinsic evidence is admissible to show the identity of the intended additional insureds.

General Builders submitted, in support of its motion for summary judgment, the affidavit of Roger H. Smith, President of General Builders. In this affidavit, Smith stated that he knew the terms of the constructions agreements between PCP and General Builders and the intent of the parties to these agreements. Smith further stated that the intent of the parties was "to share insurance costs and together to fully insure the project described in the Construction Agreement." The affidavit concludes with the assertion that, if it were not for the agreement to share insurance costs, General

Builders "would have obtained additional insurance to fully protect their involvment [sic] in the project as is its usual business custom."

Based upon this affidavit and the construction agreements before the court, General Builders contends that appellees presented a prima facie showing that they were entitled to summary judgment and that appellants failed to carry their burden of showing that a genuine issue of material fact remained. Accordingly, General Builders asserts that the trial court properly granted appellees' motion. We agree that appellees made a prima facie showing; however, the affidavit submitted by appellants raised a factual issue requiring trial.

In his affidavit, Smith relies upon Section D, entitled Insurance, of the Permanent Terms and Provisions of the construction agreements between PCP and General Builders to support his statement that the parties intended to share insurance costs and to insure together the entire Portales project. Section D requires that General Builders obtain liability insurance, workmen's compensation insurance and insurance to cover contractual liability assumed by General Builders under the agreements. The section also imposes upon General Builders the obligation to include PCP as an additional insured under these policies. It further requires PCP to obtain fire, extended coverage, vandalism and malicious mischief insurance upon the entire structure contemplated under the agreements to one hundred percent of its value. The section ends with the provision that "[t]he loss, if any, is to be made adjustable with and payable to PCP as trustee for the insureds as their interests may appear. . . . ."

■ The requirement that PCP obtain extended coverage upon the "entire structure" to one hundred percent of the insurable value with losses payable to insureds as their interests may appear is unambiguous. PCP was to provide builders' risk insurance for the benefit of General Builders. Appellants contend other provisions of the construction agreements make this provision ambiguous. We disagree. Appellants rely on provisions concerning "performance and guaranty of work" and "repairs and replacement." These provisions have nothing to do with contract provisions concerning insurance. Appellants also rely on contract provisions concerning liability insurance and indemnification. These provisions concern third-party claims; they raise no ambiguity concerning builders' risk insurance.

■ The construction agreements and the Smith affidavit made a prima facie showing that General Builders was intended to be included as an insured under the Atlas policy. Thompson also comes within this prima facie showing through provisions in its contract with General Builders which provide that to the extent General Builders was insured for builders' risk, Thompson would have an interest in such insurance. However, appellants submitted an affidavit of an employee of the general agents for Atlas. This affidavit states that there was no agreement by Atlas to "allow" General Builders and Thompson "as an additional insured under the policy." Appellees state that this affidavit "is of no evidentiary value." We disagree. The asserted lack of agreement concerning General Builders' and Thompson's status as insureds is relevant to what Atlas and PCP intended. In this situation, we hold that there was a genuine factual issue which made summary judgment improper. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972).

The summary judgment is reversed. The cause is remanded for a factual determination, by the trier of the facts, concerning the asserted intent that General Builders and Thompson be insureds under the Atlas policy. *Walters v. Hastings*, 84 N.M. 101, 500 P.2d 186 (1972).

IT IS SO ORDERED.

WOOD, C. J., concurs.

ANDREWS, J., specially concurring.

ANDREWS, Judge (specially concurring).

While I agree that the summary judgment granted herein should be reviewed and the case remanded, my reasons for such

a conclusion differ from those of the majority.

As stated in the majority opinion, in determining whether an uncertainty or ambiguity exists the policy must be considered as a whole. *See Ivy Nelson Grain Co. v. Commercial U. Ins. Co. of N.Y.*, 80 N.M. 224, 453 P.2d 587 (1969). In my opinion, the policy, when reviewed in its entirety, is ambiguous. *Thompson v. Occidental Life Ins. Co. of Cal.*, 90 N.M. 620, 567 P.2d 62 (Ct.App.) *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977). Consequently, there is no need to find provision (1) ambiguous in itself, and to do so is to ignore the rule established in *Hoge v. Farmers Market & Supply Co. of Las Cruces*, 61 N.M. 138, 296 P.2d 476 (1956), that a single sentence or paragraph may not be selected as support either for the decision that a contract is clear and plain as to its meaning, or for the decision that it is uncertain, indefinite and ambiguous.

Furthermore, even if the majority were correct in determining the ambiguity of the contract by reference to one provision, I would be unable to find ambiguity in provision (1). The phrase "affiliated and/or associated entities" refers to an entity which has an intimate business relationship in which significant aspects of financial and managerial control of the insured and the affiliate or associate are integrated. *Travelers Indem. Co. v. United States*, 543 F.2d 71 (9th Cir. 1976). As stated in *Travelers:*

> [e]xpressed in terms of doctrines of interpretation we believe we should employ *ejusdem generis* in interpreting the terms "affiliated" and "associated". Thus, these terms will be interpreted so as to make them applicable to persons, things, or entities of the same general nature or class as those specifically enumerated, *viz.* corporations, firms, individuals or other entities, parents or subsidiaries, of, or owned or controlled by [the insured]. 543 F.2d at 76.

Thus, while there may be a question of fact as to whether some slightly connected entities are "associated and/or affiliated" within the meaning of the clause, to expand this language to include contractors and subcontractors is entirely unwarranted. As the majority suggests, we must not resort to a strained construction for the purpose of creating an ambiguity where no ambiguity in fact exists. *Safeco Ins. Co. of America, Inc. v. McKenna*, 90 N.M. 516, 565 P.2d 1033 (1977).

Thus, while I agree that this case should be remanded to the trial court for a determination of the intent of the parties, I do not agree that this intent can be determined by admitting extrinsic evidence of the meaning of policy provision (1), which is, in this context, clear and unambiguous.