**JOURNAL PUBLISHING COMPANY,
and Albuquerque Publishing
Company (NSL), Plaintiffs,**

v.

**AMERICAN HOME ASSURANCE COMPANY, and National Union Fire
Insurance Company, Defendants.**

**No. 87 Civ. 4174 (PKL).**

United States District Court,
S.D. New York.

July 2, 1990.

Pryor, Cashman, Sherman & Flynn, New York City (Nathaniel H. Akerman, of counsel), for plaintiff Journal Pub. Co.

Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M. (William S. Dixon, of counsel), for plaintiff Albuquerque Pub. Co.

Sheft & Sweeney, New York City (David Holmes, of counsel), for defendants American Home Assur. Co. and Nat. Union Fire Ins. Co.

## OPINION AND ORDER

LEISURE, District Judge:

Plaintiffs Journal Publishing Company and Albuquerque Publishing Company (collectively referred to as "Journal Publishing") commenced this action against defen-

dants American Home Assurance Company and National Union Fire Insurance Company (collectively referred to as "American Home"),[1] seeking recovery under two insurance policies issued by defendants for attorneys' fees incurred by plaintiffs in the defense of a libel suit. The Court's jurisdiction arises from the diversity of citizenship of the parties.[2] This matter is before the Court on the parties' cross-motions for summary judgment.

## BACKGROUND

American Home issued two umbrella insurance policies to Journal Publishing, covering liability in excess of the amount covered by Journal Publishing's primary policy and covering occurrences not covered by the primary insurer. The first policy was issued on January 8, 1974, effective through January 28, 1977. That policy was renewed by a second policy issued on January 28, 1977, effective through January 28, 1978. The terms of the policies were identical. *See* Plaintiffs' Exhibit 5. Employers Reinsurance Corporation ("Employers") was Journal Publishing's primary insurer during that time period and the parties agree that the Employers policy did not cover defense costs.

William Marchiondo commenced the underlying action against Journal Publishing on June 13, 1975, seeking damages for allegedly defamatory material published by Journal Publishing ("*Marchiondo* Action").[3] The primary insurance policy issued by Employers and the umbrella policies issued by American Home were in force at the time of the allegedly defamatory publications. On August 1, 1975, Journal Publishing notified its insurance broker, who in turn notified American

1. Defendants American Home Assurance Company and National Union Fire Insurance Company are both controlled by a holding company, American International Group.

2. The parties agree that New Mexico law governs the insurance policies in this action, since the policy was issued in New Mexico and the loss incurred was a result of underlying litigation in New Mexico. *See Klaxon Co. v. Stentor Elec. Manuf. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Berman v. Hertz Corp.*, 127

A.D.2d 809, 511 N.Y.S.2d 938 (2d Dept.1987); *Colonial Penn Insurance Company v. Minkoff*, 40 A.D.2d 819, 338 N.Y.S.2d 444 (1972), *aff'd*, 33 N.Y.2d 542, 347 N.Y.S.2d 437, 301 N.E.2d 424 (1973).

3. Marchiondo filed a complaint against Journal Publishing in 1975 alleging libel based on several articles published in 1974. In 1978, Marchiondo filed a supplemental complaint alleging libel based on an article published in 1977.

Home by letter, of the commencement of the *Marchiondo* Action. American Home created a claims file on the *Marchiondo* Action on September 15, 1975, and maintained that file throughout the litigation. In March 1983, the *Marchiondo* jury returned a verdict in favor of Journal Publishing on the libel claims.

On March 8, 1984, Journal Publishing made a written claim against American Home for indemnification under the umbrella policies of its legal costs incurred in the defense of the *Marchiondo* Action. On March 31, 1984, Mr. Marchiondo's appeal was denied and that action was concluded. American Home notified Journal Publishing by letter on January 24, 1985 that it denied coverage for legal fees under the umbrella policies. Plaintiffs commenced this action on June 15, 1987, for recovery of over $2.5 million in legal costs incurred from 1975 through 1984 in defending the *Marchiondo* Action. Defendants American Home have now moved for summary judgment, claiming that plaintiffs failed to comply with the twelve month definite claim condition of the policies and thus cannot recover. Plaintiffs have cross-moved for summary judgment, arguing that the policies cover defense costs and thus defendants are obligated to reimburse them.

## DISCUSSION

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." " 'Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.' " *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 10 (2d Cir.1989), *quoting Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will probably preclude the entry of summary judgment.... While the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied, sub nom. Thomas J. Lipton, Inc. v. R.C. Bigelow, Inc.*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra*, 477 U.S. at 325, 106 S.Ct. at 2553. Indeed, once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, who "must set forth facts showing that there is a genuine issue for trial." *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (citations omitted).

In general, where the Court is faced with an issue of contract interpretation in a motion for summary judgment, it will analyze the language of the contract according to "its plain meaning giving due consideration to 'the surrounding circumstances [and] apparent purpose which the parties seek to accomplish.'" *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir 1990), *quoting William C. Atwater & Co. v. Panama R.R. Co.*, 246 N.Y. 519, 524, 159 N.E. 418 (1927). "In an action on a contract . . . summary judgment is perforce improper unless the terms of the agreement are 'wholly unambiguous.'" *Wards Co. v. Stamford Ridgeway Associates*, 761 F.2d 117, 120 (2d Cir.1985), *quoting Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). "The mere assertion of an ambiguity [by the nonmoving party] does not suffice to make an issue of fact. Ambiguity resides in a writing when—after it is viewed objectively—more than one meaning may reasonably be ascribed to the language used." *Thompson, supra*, 896 F.2d at 721 (citations omitted).

Under New Mexico law, as in most states, an ambiguity in an insurance policy, unlike in other contracts, is ordinarily construed in favor of the insured. *See Atlas Assurance Co. v. General Builders, Inc.*, 93 N.M. 398, 401, 600 P.2d 850, 853 (Ct. App.1979); *see also, Vargas v. Pacific Nat'l Life Assurance Co.*, 79 N.M. 152, 155, 441 P.2d 50, 53 (1968); *Couey v. Nat'l Benefit Life Ins. Co.*, 77 N.M. 512, 518, 424 P.2d 793, 796 (1967). Thus, as a matter of substantive state insurance contract law, ambiguities in an insurance policy are to be construed by the Court against the insurer. *See e.g. McCormick and Company, Inc. v. Empire Ins. Group*, 878 F.2d 27, 30 (2d Cir.1989); *Vella v. Equitable Life Assurance Society of the U.S.*, 887 F.2d 388, 391 (2d Cir.1989); *Uniroyal Inc. v. Home Ins. Co.*, 707 F.Supp. 1368, 1376 (E.D.N.Y.1988).

*A) Defendant's Motion For Summary Judgment*

Defendants have moved for summary judgment on the grounds that plaintiffs failed to comply with Condition 10 of the insurance policies and are thus precluded from recovery under those policies. Condition 10 states:

**10. Loss Payable.** Liability of the Company under this policy with respect to any occurrence shall not attach unless and until the insured, or the Insured's underlying insurer, shall have paid the amount of underlying limits on account of such occurrence. *The insured shall make a definite claim for any loss for which the Company may be liable under the policy within twelve (12) months after the insured shall have paid an amount of ultimate net loss in excess of the amount borne by the insured or the insured's underlying insurer or after the insured's Liability shall have been fixed and rendered certain either by final judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.* If any subsequent payment shall be made similarly from time to time, such losses shall be due and payable within thirty (30) days after proof of loss and been furnished to the Company in a satisfactory form. (emphasis added).

Assuming, for the purposes of defendants' motion, that the policies cover defense costs, the parties agree that under Condition 10 the insured must make a "definite claim" for loss within twelve months after a certain event in order to obtain coverage. However, the parties vigorously dispute when the actual loss occurred, whether a definite claim was made and whether the insurer must prove substantial prejudice in addition to a breach of Condition 10. The "ultimate net loss" at issue is the legal costs incurred by plaintiffs in the defense of the *Marchiondo* Action.

Defendants contend that Condition 10 requires that a definite claim be made upon the insurer within twelve months from (1) the actual payment of the ultimate net loss, (2) the entry of final judgment after trial or (3) the date of a written agreement with the claimant regarding payment. Defendants argue that final judgment does not trigger the twelve month claim period in this case, since "final judgment" only per-

tains to damage awards for injuries to third persons. As there was no written agreement with the claimant regarding payment in the instant action, defendants contend that plaintiffs' actual payment of loss triggers the running of the twelve month claim period.

Defendants rely on *Wiseman v. Arrow Freightways, Inc.,* 89 N.M. 392, 552 P.2d 1240 (Ct.App.1976), for the proposition that actual loss does not occur upon the commencement of litigation or entry of judgment against the insured, but rather actual loss occurs when injury is caused to a third party. In *Wiseman,* the plaintiff injured certain cattle during transportation and was sued two years later for damages. The plaintiff subsequently brought suit against his insurance company for indemnification less than one year after he was sued, but almost two and a half years after the injury occurred. The Court held that, under the insurance policy's "time to sue provision," the action against the insurer must be commenced within twelve months of the loss by injury to the livestock, rather than within twelve months of the commencement of litigation against the insured. 552 P.2d at 1242.

*Wiseman* is distinguishable from the case at bar and therefore defendants' reliance on its holding is misplaced. First, *Wiseman* involved a "time to sue provision," which prevents suit against the insurer after a certain time period, rather than the "definite claim provision" at issue in the instant case, which provides notice to the insurer of a claim made against it within a certain time period. Second, in *Wiseman,* the loss of livestock was an event completely unrelated to the commencement of litigation, whereas Journal Publishing's loss of defense costs are contingent upon the filing of an action against it. Third, the time to sue provision in *Wiseman* specifically required the action to be commenced within twelve months of "loss by reason of injury to livestock." 552 P.2d at 1242. In contrast, Journal Publishing's policies state that the definite claim period is triggered by payment of ultimate net loss by the insured *or* when liability is fixed by final judgment. Actual loss was not completely incurred until final judgment in the *Marchiondo* Action, since the total amount of attorneys' fees were uncertain until the conclusion of that case. Payment of actual loss is thus synonymous with final judgment in this case, since both events concluded at the same time, triggering the twelve month claim period.

Defendants argue that plaintiffs' attorneys' fees were fixed and paid annually during the *Marchiondo* Action, beginning in 1975. Defendants contend that each yearly payment of legal costs constituted "actual payment of an ultimate net loss," triggering a separate twelve month claim period for each payment. Plaintiffs did not make a written claim for defense costs against defendants until March 8, 1984. Therefore, defendants allege that plaintiffs are precluded from recovering all legal costs incurred from 1975 to March of 1983, since plaintiffs failed to tender a definite claim within twelve months of each annual payment during those eight years. Furthermore, defendants claim that notification on August 1, 1975 of the commencement of the underlying action does not serve as tender of a definite claim for defense costs by plaintiffs.

Conversely, plaintiffs argue that under Condition 10, a definite claim against the insurer does not have to be made until the insured knows the amount of the *"ultimate* net loss" with certainty. Plaintiffs assert that they could not possibly know the amount of their ultimate loss until completion of the underlying *Marchiondo* Action. Plaintiffs do not take issue with the notification of the underlying action to defendants on August 1, 1975. Instead, they contend that their written claim for indemnification made on March 8, 1984 was sufficient tender of a "definite claim" for defense costs.

A recent case in the Western District of Pennsylvania addressed a factually similar situation, as a definite claim provision identical to Condition 10 in this case was at issue. *See Liberty Mutual Ins. Co. v. Those Certain Underwriters at Lloyds,* 650 F.Supp. 1553 (W.D.Pa.1987). In *Liberty Mutual,* the plaintiff settled a sex dis-

crimination suit with a third party in 1978 and made payment on the settlement in 1979. During the settlement negotiations, another insurance company filed suit against Liberty Mutual challenging its own liability for the settlement. Upon termination of the underlying litigation with the other insurance company in 1982, Liberty Mutual made a definite claim on defendant Lloyds. for indemnification of the settlement amount. Lloyds denied that claim, arguing that Liberty Mutual failed to comply with the twelve month definite claim provision under their policy, due to the three and a half year lapse from the date of the settlement to the tender of a definite claim.

The Court rejected Lloyds' argument and held that Liberty Mutual had made a definite claim upon the defendant in satisfaction of the "Condition 10" provision, since its ultimate net loss could not be determined while the underlying action was still pending. "In light of the uncertainty cast by the [underlying] litigation on the insurance claims to be made by plaintiff, Liberty Mutual knew with certainty the amount of its claim against these underwriters only upon the conclusion of the [underlying suit]. A demand for payment of the full amount of the [settlement] was then promptly made on defendants, satisfying condition [10]." 650 F.Supp. at 1557. Accordingly, the Court held that the completion of the underlying litigation, when it bears directly upon the amount of the ultimate net loss, is the event that triggers the running of the definite claim period.

■ Under *Liberty Mutual*, final judgment in the *Marchiondo* Action would trigger the running of the twelve month definite claim period. However, a question of fact remains as to what date "final judgment" occurred in the underlying action, which bears directly upon the timeliness of plaintiffs' written claim of March 8, 1984. Although judgment was entered in the *Marchiondo* trial in March of 1983,[4] that action was not concluded until March 31,

1984, when Marchiondo's appeal was denied. Plaintiffs' written claim against defendants falls between those two dates. Under Condition 10, if "final judgment" is the date of the judgment at trial, then, assuming that date was no earlier than March 8, 1983, plaintiffs' tender of a definite claim would be timely. However, if "final judgment" is the date the litigation concluded, then plaintiffs' claim would be premature. Thus, the determination of the "final judgment" date, under Condition 10, is crucial to determining plaintiffs' compliance or noncompliance with that condition. This is a question of fact to be resolved by the jury at trial. Additionally, a question of fact remains as to whether plaintiffs' initial notice to defendants of commencement of the *Marchiondo* Action is sufficient tender of a definite claim under Condition 10. In light of these factual issues, the Court finds that defendants have failed to show plaintiffs' breach of the definite claim provision for the purposes of summary judgment.

It is axiomatic that "the insuror must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before it will be relieved of its obligations under a policy." *Foundation Reserve Ins. Co. v. Esquibel*, 94 N.M. 132, 134, 607 P.2d 1150, 1152 (1980); see also, *State Farm Fire and Casualty Co. v. Price*, 101 N.M. 438, 444, 684 P.2d 524, 530 (Ct.App.), cert. denied, 101 N.M. 362, 683 P.2d 44 (1984); *Security Mutual Casualty Co. v. O'Brien*, 99 N.M. 759, 770, 664 P.2d 365, 376 (Ct.App.1982). Defendants argue that plaintiffs' alleged breach of the definite claim provision will relinquish defendants' liability under the policy and that no additional evidence of substantial prejudice to the insurer is required. Defendants rely on *Sanchez v. Kemper Ins. Companies*, 96 N.M. 466, 632 P.2d 343 (1981), which held that the substantial prejudice requirement is waived when the insurer raises the defense of the insured's failure to comply with a time to sue provision. Defendants analogize the

---

4. It is unclear from the record exactly on which date judgment was entered in the *Marchiondo* trial.

time to sue provision in *Sanchez* with the definite claim provision at issue in this case, and thus argue that they need not prove substantial prejudice.

Conversely, plaintiffs claim that the different policy considerations behind time to sue and definite claim provisions result in the conclusion that waiver of the substantial prejudice requirement is reserved solely for time to sue provisions and does not apply to definite claim provisions. Plaintiffs' argument is well grounded in light of *Foundation Reserve, supra,* 607 P.2d at 1152, which upheld the insurer's substantial prejudice requirement for breach of a notice and cooperation provision, similar to the definite claim provision in the case at bar.

■ Based on the arguments presented, it seems that the substantial prejudice requirement remains intact for the definite claim provision set forth in Condition 10 of the policy. However, since the Court does not resolve the issue of whether plaintiffs have breached Condition 10 at this time, it does not need to reach the issue of substantial prejudice. Furthermore, under New Mexico law, substantial prejudice is a question for the jury, *State Farm, supra,* 684 P.2d at 531, and therefore not properly resolved on a motion for summary judgment. Accordingly, since the Court finds that defendants have failed to prove a breach of the definite claim provision by plaintiffs, defendants' motion for summary judgment is denied.

*B) Plaintiffs' Cross–Motion for Summary Judgment*

■ Plaintiffs have cross-moved for summary judgment, claiming that the umbrella policies issued by defendants not only extend the limits of coverage for liability above the amount covered by the primary insurer, but also provide coverage for injuries and losses not specifically covered by the primary policy.[5] The parties have stipulated that plaintiffs' primary policy with Employers did not cover defense costs and thus a gap in coverage exists. Plain-

tiffs contend that the umbrella policies cover that gap of defense costs, based on the plain meaning of the policy. Additionally, plaintiffs rely on the testimony of their agents and defendants' agents as evidence of the parties' intent to enter into a policy that would cover defense costs. Defendants deny that the umbrella policies cover defense costs and argue that parol evidence of testimony taken during discovery is inadmissible to interpret the policies.

Plaintiffs rely on the definition of "ultimate net loss" in the umbrella policies to show that defense costs are covered. The policy provisions at issue are set forth in pertinent part as follows:

### DEFINITIONS

9. **Ultimate Net Loss**—*Except as provided in Insuring Agreement II, "Defense", the term "Ultimate Net Loss" shall mean* the total sum which the Insured, or any company as its insurer, or both become obligated to pay by reason of ... *defense of claims....* (emphasis added).

### INSURING AGREEMENTS

II. **Defense, Settlement, Supplementary Payments—**... The Company agrees to pay the amounts incurred under this Insurance Agreement II, *except in settlement of claims and suits,* in addition to the limit of liability stated in the Declarations, and *such defense and supplementary payments shall not be included as part of the ultimate net loss, as defined in the policy. The insured shall promptly reimburse the company (excepting Defense Costs) for any amount of ultimate net loss paid on behalf of the insured....* (emphasis added).

Plaintiffs interpret Definition ¶ 9 to include attorneys' fees as an "ultimate net loss" since that paragraph specifically refers to "defense of claims." Because "Insuring Agreement I, Coverage," provides that the insurer will "pay on behalf of the insured

---

**5.** Definition ¶ 9 of the policies states that "[t]he Company shall not be liable for expenses as

[ultimate net loss] when such are covered by underlying policies of insurance."

the ultimate net loss ... as defined herein and caused by or arising out of an occurrence," plaintiffs argue that defendants must reimburse the legal fees incurred in defending the *Marchiondo* libel action. This argument ignores the effect of the initial qualifying language in Definition ¶ 9 that *"Except* as provided in Insuring Agreement II, 'Defense,' the term "Ultimate Net Loss" shall mean...." (emphasis added). Insuring Agreement II states that "... defense and supplementary payments shall *not* be included as part of the ultimate net loss as defined in the policy" and that "[t]he Insured shall promptly reimburse the company (*excepting Defense Costs*)...." (emphasis added).

After a careful reading and analysis of the insurance policies, the Court cannot find that the policies as written are wholly unambiguous as to whether defense costs are covered. The policies can be interpreted as having more than one meaning, since the language of Definition ¶ 9 is inconsistent with the qualifying language of Insuring Agreement II. It is true that ambiguities should be read in favor of the insured where the policy permits such a reading. *See Atlas Assurance, supra,* 600 P.2d at 853; *McCormick and Company, supra,* 878 F.2d at 30. However, in the instant case, the ambiguity is such that it is difficult to meet plaintiffs' interpretation when reasonably reading the contract on its face, due to the qualifying language of Insuring Agreement II.

■ "Because an ambiguity is present in the relevant provisions of the [policy], the parties are entitled to present extrinsic evidence of intent." *Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 512 (2d Cir. 1990); *see also Roberts v. Consolidated Rail Corp.,* 893 F.2d 21, 24 (2d Cir.1989). "Parol evidence is admissible to aid in interpretation of a contract only when the language of the contract is ambiguous." *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990) (*citing International Klafter Co. v. Continental Casualty Co.,* 869 F.2d 96, 100 (2d Cir. 1989)). The extrinsic evidence of intent in this case lies in the conflicting testimony of witnesses deposed during discovery. Plaintiffs rely on this testimony as evidence of both parties' intent to contract to cover defense costs. The result is a genuine issue of material fact as to the intent of the parties.

■ "Summary judgment as to the meaning of a contract term may not be granted when the term's meaning is not clear or is reasonably susceptible to more than one interpretation." *Record Club of American, Inc. v. United Artists Records, Inc.,* 890 F.2d 1264, 1270 (2d Cir.1989); *see also United States Naval Institute v. Charter Communications, Inc.,* 875 F.2d 1044, 1048 (2d Cir.1989). Furthermore, summary judgment is an improper disposition of a case where a contract is ambiguous and parol evidence of the intent of the parties is conflicting. *Burger King, supra,* 893 F.2d at 529; *Curry Road, supra,* 893 F.2d at 512. In light of the ambiguity of the insurance policy as to coverage of defense costs and the remaining factual issue of the parties' intent, the Court finds that summary judgment is inappropriate. Accordingly, plaintiffs' cross-motion for summary judgment is denied.

## CONCLUSION

Defendants' motion for summary judgment is denied. Plaintiffs' cross-motion for summary judgment is denied.

Plaintiffs shall contact the Court within twenty days of this order to set a time convenient to the parties for a pre-trial conference.

SO ORDERED.