EMPLOYERS' FIRE INSURANCE COMPANY, BOSTON, MASSACHUSETTS, a corporation, Plaintiff,

v.

Gage BEHUNIN d/b/a Gage Behunin Company, and Otto Buehner and Company, Incorporated and Grant Marsh, Partners d/b/a Buehner Schokbeton Company, previously known as Buehner Concrete Products, Defendants and Third-Party Plaintiffs,

v.

BOULDER SCHOOL BOARD, BOULDER VALLEY SCHOOL DISTRICT, RE-2, BOULDER, COLORADO, Third-Party Defendant.

Civ. A. No. 67-C-138.

United States District Court
D. Colorado.

Nov. 2, 1967.

Zarlengo, Mott & Carlin, William J. Baum, Denver, Colo., for plaintiff.

Weller, Friedrich & Hickisch, William H. Hazlitt, Denver, Colo., for defendant Gage Benhunin.

Calvert & Calvert, David R. Calvert, Aurora, Colo., for defendants Buehner Concrete Products.

Martin, Brotzman, Caplan & Knapple, Gerald A. Caplan, Boulder, Colo., for third-party defendant.

## MEMORANDUM OPINION AND ORDER

### (DISPOSITION OF MOTION FOR SUMMARY JUDGMENT)

WILLIAM E. DOYLE, District Judge.

Employers' Fire Insurance Company, as assignee of the claims of its insured, Boulder School Board, initiated this action against Gage Behunin and Buehner Schokbeton Company for damages allegedly caused by the defendants' negligence. We have jurisdiction by virtue of diversity of citizenship (28 U.S.C. § 1332). The matter is presently before the Court on defendant Behunin's motion for a summary judgment of dismissal under Rule 56(b) of the Federal Rules of Civil Procedure.

The facts are as follows. On August 20, 1963, Mellwin Construction Company entered into a contract with the Boulder School Board to build Southern Hills Junior High School in Boulder, Colorado. The contract specifications required Mellwin Construction to take out a builders' risk insurance policy covering loss and damage to the building during the process of its construction, and further required all subcontractors to pay a portion of the total insurance premiums to be decided by the ratio of their subcontract prices to the total insurance carried. The policy was to be made payable

to the "Boulder School Board as Trustee," and the contract required the School Board to pay all insurance proceeds to the interested contractors as they completed the repairing of destroyed or damaged work. On December 27, 1963, a builders' risk policy was acquired from Employers' Fire Insurance Company in accordance with the contract requirements.

On September 1, 1963, Mellwin Construction entered into a subcontract with defendant Buehner Schokbeton Company which bound the latter to supply and install prestressed and precast concrete beams and columns for the building. Approximately a month later, Buehner Schokbeton Company in turn entered a subcontract whereby defendant Gage Behunin agreed to install the beams and columns for the project. In accordance with contract specifications, Behunin paid his proportionate share of the builders' risk insurance premiums.

In the following months the participating contractors began construction of the school, but during the night of January 17, 1964, the partially completed building was heavily damaged when its supporting beams and columns collapsed during a severe wind storm. Pursuant to the insurance policy, Employers' Risk Insurance Company paid $22,437.08 to the "Boulder School Board as Trustee," and this amount was apparently paid out to the interested contractors from time to time as they completed the reconstruction of the damaged property.

■ On March 23, 1967, Employers' Fire Insurance Company, as assignee of the School Board's claims against the

defendants, filed the present action. Defendant Behunin immediately filed a motion for summary judgment. His claim is that he was an insured party under the insurance policy because the contract specifications required him to pay a proportionate part of the premiums and extended insurance benefits to him. The insurance company opposes this motion on the grounds that the policy failed to name Behunin as an insured party and did not incorporate the contract specifications beneficial to him.[1] Thus, the decisive legal question is whether the School Board could extend the benefit of its insurance policy to a third party without the express knowledge and consent of the insurance company.[2]

This question is somewhat unique, but it has been treated in analogous cases which involve insurance on the shipment of goods by common carriers. In the past, it was apparently common practice for carriers to incorporate a clause in their bills of lading giving them the benefit of any insurance on the goods being shipped. Such benefit-of-insurance clauses were uniformly upheld by the courts.[3] See, e. g., Phoenix Ins. Co. v. Erie & W. Transp. Co., 117 U.S. 312, 321, 6 S.Ct. 750, 1176, 29 L.Ed. 873 (1886); Pennsylvania R. Co. v. Burr, 130 F. 847 (2 Cir. 1904); Roos v. Philadelphia W. & B. R. Co., 199 Pa. 378, 49 A. 344 (1901). These courts held that after payment of the insurance proceeds, the insured party had no right to sue the carrier to whom insurance benefits had been extended. Since the insured had no claim against the extended beneficiary, the insurer acquired no derivative rights by subrogation or assignment.

1. The insurance company also argues that Behunin was not a "contractor" within the terms of the contract specifications. This argument has no merit. All contractors, including sub-subcontractors, were clearly embraced by the terms of the specifications.

2. The insurance policy was payable to the "School Board as Trustee." Therefore, under the law of trusts, the insurance company had inquiry notice of the terms of the trust between the School Board

and the contractors. Restatement of Trusts 2d § 297, comment d (1959). However, the presence or absence of notice is not crucial to our decision.

3. At present, most insurance companies effectively prevent the extension of insurance benefits to carriers by prohibiting this in their policies. Couch on Insurance 2d § 61.178 (1966). However, the policy in question contained no such prohibition.

Platt v. Richmond, Y. R. & C. R. Co., 108 N.Y. 358, 15 N.E. 393 (1888); see also, Couch on Insurance 2d §§ 61.172–61.187 (1966).

 It would appear that this extended beneficiary rule affords Behunin at least limited protection from liability in the present situation. However, it is doubtful that Behunin is rendered immune from *all* damages covered by the insurance policy. In the bill of lading cases, the clauses clearly extended the benefit of all insurance on the goods to the carrier. In the present case, however, Behunin can be impliedly entitled only to the benefit of that portion of the insurance proceeds which covered damages to the work in process under his subcontract. The specifications provided a form of property insurance on each participating contractor's work in process and did not purport to insure each contractor against all damages to the building that might result from his negligence.[4] If, for example, the entire building would have been destroyed, Be-

hunin would not have been entitled to the entire $275,000.00 in insurance proceeds; this would have been paid out in proportionate amounts to the participating contractors as they completed reconstruction of their damaged projects and Behunin would have received reimbursement only for the damages done to the prestressed beams and columns he was erecting. It is therefore clear that insurance benefits were not extended to Behunin for damages caused to the work in process of other participating contractors, and if the damage to those contractors resulted from his negligence, the School Board and its assignee, Employers' Fire Insurance Company, have a claim against him for those losses.

The motion for summary judgment is therefore granted as to all claims arising out of damages to the work in process under the Behunin subcontract and is denied as to all claims arising out of damages to the work in process of other participating subcontractors.[5] As to the claims which have not been dismissed, a

---

4. The specifications contain this definition:
"The words 'interested Contractors' as used in this Article shall mean those Contractors whose work shall have been insured at the Contractor's expense and shall have been injured or destroyed by one of the hazards covered by such insurance."

5. The Statement of Loss and Damage was broken down as follows:

| | |
|---|---:|
| Prestressed Beams & Columns (Buehner Schokbeton Company) | $15,397.80 |
| Scaffold Plank (Brick Contractors) | 115.00 |
| Resilient Flooring (Denver Building Supply Company) | 950.00 |
| Electrical Work (Intermountain Electric Company) | 200.00 |
| Mechanical Lines (Carlson Plumbing & Heating) | 140.00 |
| Concrete Walls (Mellwin Construction Company) | 3,340.00 |
| Debris Removal (National Construction Company) | 280.00 |
| 10% Overhead and Contingency | 2,014.28 |
| TOTAL | $22,437.08 |

This Statement does not indicate the amount of proceeds allocated to the Behunin subcontract, but it appears that the greatest amount of immunity Behunin is entitled to is the amount allocated to Buehner Schokbeton Company plus a proportionate share of the 10% allowance for overhead and contingency. However, the exact amount of immunity will have to be determined either by stipulation or at trial.

factual controversy exists which can only be resolved by settlement or trial. If a trial is necessary, all issues herein decided shall be deemed established and the trial shall be conducted accordingly.