642 P.2d 1106

**UNITED NUCLEAR CORPORATION, a Delaware corporation, Plaintiff-Appellee,**

**v.**

**MISSION INSURANCE COMPANY, a California corporation, Defendant-Cross-Plaintiff Appellant,**

**and**

**National Tank and Pipe Company, an Oregon corporation; M. M. Sundt Construction Company, an Arizona corporation, Defendant-Cross-Defendants Appellees,**

**and**

**Dorr-Oliver, Incorporated, a Delaware corporation, Defendants.**

No. 5084.

Court of Appeals of New Mexico.

Feb. 2, 1982.

Rehearing Denied Feb. 16, 1982.

G. Gary Duncan, Charles Olmsted, Santa Fe, for United Nuclear Corp.

Floyd Wilson, Daniel P. Dabney, Johnson & Lanphere, Albuquerque, for Mission Ins.

Henry F. Narvaez and Spence Reid, Keleher & McLeod, P.A., Albuquerque, for National Tank & Pipe Co.

Willard F. Kitts, Kitts & Whitefield, Albuquerque, for M. M. Sundt Const. Co.

John F. Molloy, Molloy, Jones, Donahue, Trachta Childers & Mullamo, Tucson, Ariz., for Dorr-Oliver, Inc.

## OPINION

LOPEZ, Judge.

United Nuclear Corporation (UNC) brought suit against National Tank and Pipe Company (National Tank), M. M. Sundt Construction Company (Sundt) and Mission Insurance Company (Mission) for damages resulting from defects in structures built by National Tank and Sundt, hereinafter known as Builders. The claims against Builders are based on negligence and breach of contract. Mission issued a builders' risk insurance policy to UNC. Builders cross-claimed against Mission, each asserting that they are co-insured under the builders' risk policy issued to UNC by Mission, and claiming coverage to the extent of any recovery against them by UNC. Mission cross-claimed against Builders, asserting the right of subrogation to the extent that Mission might be liable to UNC for any damages resulting from the negligence or breach of contract of Builders. The trial court granted summary judgment in favor of Builders, dismissing Mission's cross-claims against Builders and refusing to dismiss Builders' cross-claims against Mission. Mission now appeals the judgment of the trial court on its cross-claims against Builders. We reverse and remand.

This appeal is part of a large and extremely complex construction claims case being pursued in Santa Fe County. The trial court certified its decision for immediate review pursuant to N.M.R.Civ. Pro. 54(B)(1), N.M.S.A.1978 (Repl.Pamph.1980).

UNC is the owner of the Church Rock Uranium Mills near Grants, New Mexico. Builders are two of the sub-contractors who helped construct the mill. Mission issued the builders' risk insurance policy to UNC.

Builders cross-claimed against Mission alleging that they are insured by the insurance policy issued by Mission and that Mission is obligated to pay UNC on their behalf for any losses which may be sustained by UNC and that Builders are responsible. Builders also allege that they are immune from subrogation by Mission.

Mission in its cross-claims against Builders alleges the right of subrogation against Builders if it has to pay UNC for any losses covered by the policy in which Builders were actually responsible.

Builders moved to dismiss Mission's cross-claims on grounds that an insurance company cannot subrogate against a co-insured for reimbursement of funds it has to pay to another insured under the same policy. Mission claims that Builders are insured under the policy for losses to their own property only, that Builders are not seeking to recover against Mission for casualty losses to their own property, but are attempting to obtain coverage under Mission's policy in the event Builders are held liable to UNC for negligence or breach of contract. Mission also claims that the phrase "as their interests may appear" contained in the insurance policy means that each insured is insured only for risks to its own property, but if it doesn't mean that, then the phrase is ambiguous.

Builders allege that the policy phrase in question is not ambiguous and that it refers to the distribution of monies paid or to be paid out of the policy. They further allege that if the phrase "as their interests may appear" is ambiguous, that they are entitled to a favorable construction thereof, first because neither participated at all in drafting the policy, and second because UNC's own participation was so limited as not to justify dispensing with the rule of construction in favor of the insureds. Builders allege that the policy is an "all risk" policy. They refer to clauses in the policy which state that coverage is provided for property involved in the construction project which they own, toward which they face any risk or for which they may have any liability if lost.

The judgment of the trial court states:

THIS MATTER having come before this Court on the Motions of National Tank and Sundt to dismiss the cross-claims against them by Mission, the Court having considered the entire file herein including pleadings, depositions, interrogatories and admission, and the Court being otherwise sufficiently advised in the premises hereby FINDS AS FOLLOWS:

1. National Tank and Sundt are and were intended to be insured under Mission's builder's risk policy.

2. Mission's builder's risk policy does provide National Tank and Sundt with insurance coverage with respect to the claim for damages which United Nuclear is asserting against National Tank and Sundt, subject to provisions of the policy and subject to applicability and proof of the exclusions stated in the subject policy.

3. Mission's claims for subrogation against National Tank and Sundt is barred.

4. Pursuant to Rule 54(B)(1) the Court expressly determines that there is no just reason for delay and final judgment should be entered at this time dismissing Mission's cross-claims against National Tank and Sundt.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the cross-claims by Mission Insurance Company against National Tank and Pipe Company and M. M. Sundt Construction Company are hereby dismissed with prejudice.

IT IS FURTHER ORDERED that the entry of this order shall not bar discovery proceedings or the further processing this case in the trial court.

The issue on appeal is whether the trial court properly granted summary judgment against Mission on its cross-claims against Builders.

In order to determine this issue, the question of whether Builders are co-insured under the policy with respect to the liability claims being asserted against Builders by UNC must be determined by us.

To decide this issue it becomes our duty to view the Builders risk insurance policy and interpret those policy provisions which are pertinent thereto. Accordingly, we are guided by the following principles of insurance law.

An insurance policy is a contract and is generally governed by the law of contracts. The rights and duties of the parties are measured by what they intended, to what they mutually agreed, and upon what their minds met. *Vargas v. Pacific National Life Assurance Company*, 79 N.M. 152, 441 P.2d 50 (1968); *Thompson v. Occidental Life Ins. Co. of Cal.*, 90 N.M. 620, 567 P.2d 62 (Ct.App.), *cert. denied*, 91 N.M. 4, 569 P.2d 414 (1977). If possible, the meaning of the contract must be ascertained from a consideration of the written policy itself. Extrinsic evidence is not admissible to determine the intent of the parties, unless there is an uncertainty and an ambiguity in the contract. *Hoge v. Farmers Market & Supply Co. of Las Cruces*, 61 N.M. 138, 296 P.2d 476 (1956); *see McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972).

In determining whether an uncertainty or ambiguity exists, the policy must be considered as a whole. *See Ivy Nelson Grain Co. v. Commercial U. Ins. Co. of N. Y.*, 80 N.M. 224, 453 P.2d 587 (1969). A single sentence or paragraph may not be selected as support for either the decision that a contract is clear and plain as to its meaning, or that it is uncertain, indefinite and ambiguous. *Hoge v. Farmers Market & Supply Co. of Las Cruces*. In addition, words and terms must be read in the usual and ordinary sense, unless some different meaning is required. *Cain v. National Old Line Insurance Company*, 85 N.M. 697, 516 P.2d 668 (1973). Whether an ambiguity exists is a question of law to be decided by the court. *Thompson v. Occidental Life Ins. Co. of Cal.* In determining this question, the test to be used is whether the policy provision is fairly susceptible of two different constructions by reasonably intelligent men. *Alvarez v. Southwestern Life Insurance Co., Inc.*, 86 N.M. 300, 523 P.2d 544 (1974). However, resort will not be made to a strained construction for the purpose of creating an ambiguity when no

ambiguity in fact exists. *Safeco Ins. Co. of America, Inc. v. McKenna*, 90 N.M. 516, 565 P.2d 1033 (1977).

If an ambiguity exists in the policy, the general rule is that a liberal construction favorable to the insured should be adopted. *See Vargas v. Pacific National Life Assurance Company; Thompson v. Occidental Life Ins. Co. of Cal.* This general rule, however, operates only after the insured has been determined. It does not operate in deciding whether a certain entity belongs to the insured class described in the policy. Accordingly, a third person who is not a party to a contract of insurance usually is not entitled to a construction in his favor in determining whether that third person is an insured under the policy. *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32 (Tex.Civ.App. 1974); 44 C.J.S. *Insurance* § 308, at 1226 (1945).

The policy in question contains the following provisions which are relevant in our determination of whether Builders are co-insured under said policy:

1. INSURED: United Nuclear Corporation (owner) and each subcontractor and/or subcontractor and/or materialmen as their interests may appear as now or may hereafter be constituted for account of whom it may concern.

\* \* \* \* \* \*

7. PROPERTY INSURED: All property, meaning building(s) including foundation, retaining walls and excavations under course of construction, and all materials, supplies, forums, tools, machinery, equipment, fixtures and temporary structures and trailers belonging to insured, or at risk of insured or for which insured may be legally liable or may have, prior to loss, assumed liability so long as said property is to be used in or incidental to the construction, erection and installation referred to herein.

\* \* \* \* \* \*

9. PERILS INSURED: This policy insures against all risks of physical loss or damage except as excluded herein.

10. PERILS AND RISKS EXCLUDED: This policy does not insure:

\* \* \* \* \* \*

H. Error, omission or deficiency in design, plan specifications, faulty workmanship, or materials, but not excluding physical loss or damage.

Mission admits that Builders are contractors or subcontractors of UNC, but contends that, viewing the policy as a whole, it doesn't cover Builders with respect to the liability claims advanced by UNC.

Mission argues (1) that the phrase "as their interests may appear" in paragraph 1 is ambiguous; (2) that paragraph 7, describing "property insured," covers only casualty losses on the property used in the course of construction by Builders; and (3) that paragraph 10 H clearly indicates that the policy does not cover liability to third persons, because it expressly excludes coverage for the major sources of third party liability, namely design problems and faulty workmanship.

Builders argue (1) that paragraph 1 is not ambiguous, that the phrase "as their interests may appear" applies only to the amounts of distribution which should be paid by Mission; and (2) that the policy as a whole is not ambiguous and protects them against losses asserted by UNC, unless such losses are specifically excluded from coverage.

We agree with Mission that the phrase "as their interests may appear" is susceptible to more than one interpretation or construction and as such is ambiguous. Webster's Third New International Dictionary (1966) defines "interests" as a right, title, or share in a thing, participation, advantage, profit and responsibility.

The phrase could be interpreted that Mission insures Builders for whatever property in the construction project to which they have a right or title. On the other hand it could be interpreted as meaning that Mission insures Builders for whatever responsibility Builders have on the project, which could mean that Builders would be insured for losses based on their negligence or

breach of contract. Then Builders would be co-insured, and would be covered for losses claimed by UNC, and would be immune for subrogation by Mission.

However, paragraph 10 H contains possible contradiction to the second interpretation by excluding "[e]rror, omission or deficiency in design, plan specifications, faulty workmanship, or materials, but not excluding physical loss or damage."

It is not clear whether paragraph 10 H excludes coverage for negligence or breach of contract.

Finally, in paragraph 7, the phrase "for which insured may be legally liable" is also ambiguous. It could be interpreted as meaning either property which insureds have erected and for which they are responsible on basis of negligence, or only property owned by the insured. The latter interpretation would be a casualty loss coverage.

We have two New Mexico cases which help us decide this case. Both Builders and Mission urge this court to apply these cases to support their respective views. We review these cases in support of our decision, since paragraphs 1, 7 and 10 H are ambiguous. In *Sentry Ins. Co. v. George Rutherford Inc.*, 92 N.M. 210, 585 P.2d 1091 (1978) the New Mexico Supreme Court determined that provisions in a materially identical Builders risk insurance policy were ambiguous. It held that the trial court erred by disposing of the issue as a matter of law, and the case was remanded for the purposes of obtaining extrinsic evidence which would reveal the intentions of the party in entering into an insurance contract. In *Sentry*, the disputed clause stated: "it is agreed that the policy is amended to include George Rutherford Inc., as additional named insured as his interests may appear." The Supreme Court recognized that Rutherford was an insured under the policy for some purposes, but held that the phrase "as his interests may appear" was ambiguous, and that it was necessary to resort to extrinsic evidence to determine the meaning of that qualification. In the present case Builders are insured under the policy subject to the same qualification.

In *Atlas Assur. Co. v. General Builders*, 93 N.M. 398, 600 P.2d 850 (Ct.App.1979), the issue was whether the contractor was an insured under a builder's risk insurance policy so as to bar a subrogation action by the insurance company. This court found that there was ambiguity in the provision which specified who was considered an insured under the policy. The only difference between Atlas and the case at bar is that the specifying provisions did not contain the vague classification "as their interests may appear," but rather was ambiguous in limiting coverage to the project owner "and/or any subsidiary, and/or affiliated, and/or associated entities." This court held that the trial court erred in determining the question of the status of the contractor as an insured as a matter of law, and the case was remanded to the trial court for consideration of extrinsic evidence which would shed light upon the intention of the parties.

Some cases from other jurisdictions have held that as a matter of law the phrase "as their interests may appear" does not make the party insured or co-insured in the policy. In *Paul Tishman Co. v. Carney & Del Guidice, Inc.*, 320 N.Y.S.2d 396, 36 App. Div.2d 273 (1971), the court distinguished between casualty loss insurance and a liability policy. This was a subrogation action by the insurance company which had paid a loss arising out of a fire in a building under construction. Recovery was sought against the subcontractor on grounds of negligence. This case, like the case at bar, involves damages negligently done by the subcontractor to property on the construction site other than its own. The defendant subcontractor moved for summary judgment on grounds that under the applicable policy, it was a named insured. The court held in favor of the insurance company and said:

What the defendant here seeks to assert is that because he is insured against any damage to whatever interest he may have had in the property, he is also insured for any damage he may have done to property in which he had no interest. 320 N.Y.S.2d at 397.

In *Employers' Fire Insurance Co., Boston, Mass. v. Behunin*, 275 F.Supp. 399 (D.Colo. 1967), a general contractor took out a builder's risk insurance policy, and the negligence of subcontractor later caused partial collapse of the project, resulting in heavy damage. A subrogation action was brought by the insured against the subcontractor, and the subcontractor moved for summary judgment, arguing that the subcontractor was an insured under the policy, and thus not amenable to a suit in subrogation. The court rejected this argument, and ruled that the *subcontractor was entitled only to the benefit of that portion of the insurance proceeds which covered damage* to the work in process under its subcontract.

The specifications provided a form of property insurance on each participating contractor's work in process and did not purport to insure each contractor against all damages to the building that might result from his negligence. If, for example, the entire building would have been destroyed, Behunin would not have been entitled to the entire $275,000.00 in insurance proceeds; .... It is therefore clear that insurance benefits were not extended to Behunin for damages caused to the work in process of other participating contractors, and if the damage to those contractors resulted from his negligence, the [owner] and its assignee, Employer's Fire Insurance Company, have a claim against him for those losses. 275 F.Supp. at 402.

In *Public Serv. Co. of Okl. v. Black & Veatch, Consul. Eng.*, 328 F.Supp. 14 (N.D. Okl.1971), the insurance company bringing the subrogation suit had issued a "property floater policy", the named insureds including both the Public Service Company of Oklahoma and Black & Veatch, Engineers, "as their interests may appear". The policy insured against physical loss or damage to the insured's property at a Public Service power plant. Due to the alleged negligence of Black & Veatch in designing certain turbines, Public Service property suffered damage. After paying for this damage suit was brought by the insurer against Black & Veatch. Defendant argued that no subrogation could be brought against it, because it was a named insured under the policy. The insurer argued that defendant was a named insured only to the extent of its own property. Because the damaged property belonged exclusively and solely to the Public Service Company, subrogation did exist in favor of the insurance company. The court agreed and held that the defendant was a named insured only as its interest appeared:

If this is so and if through negligence the Defendant damaged property owned solely by the Plaintiff Public Service which was within the coverage of the insurance policies, it would seem that equity and good conscience should require the Defendant through subrogation to pay for its negligence to those who have compensated the Plaintiff Public Service for such damage. Certainly a different result would attach if the Defendant damaged its own property which was covered by the policy. In this case its insurer could not recover from it. But no equitable reason is believed to exist to support the proposition that the Defendant should not be liable to the [insurance company] for its negligence in damaging the property of another even though the damage was to property of a named co-insured and the property was included as insured property by the terms of the policies. 328 F.Supp. at 17.

In *Turner Const. Co. v. John B. Kelly Co.*, 442 F.Supp. 551 (E.D.Pa.1976), the builder's risk policy in question provided:

It is specifically understood and agreed that this policy covers both the interest of the Assured and the contractor(s) and subcontractor(s) as additional Assureds hereunder, *as their interests may appear.* (Emphasis added by the court.) Id. at 552.

The "property covered" clause of the builder's risk policy in *Turner* states:

[A]ll property, materials, equipment, machinery and supplies, contractors tools chargeable to the job, owned by the Assured or others and for which the Assured may be liable or assumes liability,

to be used in or incidental to the construction.

A fire occurred on the construction site, allegedly caused by the negligence of Kelly, a subcontractor. The insurance carrier paid the general contractor for the loss and then filed a subrogation claim against Kelly. Kelly moved for summary judgment on the grounds that, under the policy language quoted above (which is materially identical to the policy language found in the present case), Kelly was an "insured" under the policy and the insurance company therefore could not bring a subrogation claim against Kelly. This contention was rejected by the Court and Kelly's motion for summary judgment was denied.

> The subcontractor's interest in the insurance contract is limited by the phrase "as their interests may appear." (citation omitted). The purpose is to give the subcontractor an interest in the building according to the amount of the subcontractor's work and material already utilized. The clause was not inserted to make Kelly a co-insured for all purposes. 442 F.Supp. at 554.

In all of the cases discussed above, the courts have determined as a matter of law whether the terms of the insurance contracts are ambiguous. Once there has been such a determination, some appellate courts go on to construe the ambiguous language as a matter of law. The New Mexico appellate courts have remanded the cases to the fact-finder for a resolution of the ambiguity. The fact-finder must consider extrinsic evidence in resolving the ambiguity. *Sentry v. Rutherford; Atlas v. General Builders.* In this case, the extrinsic evidence which appears in the record, includes the subcontract agreements between UNC and Builders and the depositions of Richard Smith and A. Kent Kuster.

The portion of the subcontract agreement covering insurance states:

PART I

Contractor shall at its expense, procure and maintain at all times the following insurance:

A. Contractor before commencing the Work shall be qualified under the Workmen's Compensation Law of the state or states in which the Work or any portion of the Work is to be performed or under any other applicable Workmen's Compensation Laws and shall at all times comply with the provisions of said laws. In addition to compliance with applicable Workmen's Compensation Laws, contractor shall procure, carry and maintain Employer's Liability Insurance to a limit of $500,000 for any one accident. Satisfactory evidence of Contractor's compliance with this paragraph A shall be furnished to Owner prior to commencing the Work. Contractor shall pay all costs, premiums and penalties incurred in complying with the Paragraph A.

B. Contractor shall procure, carry and maintain upon all of its operations hereunder Comprehensive Public Liability Insurance covering all operations of insured and of lower tier sub-contractors, covering all vehicles and equipment (whether owned, rented or borrowed), covering liability assumed under this Contract, and providing Completed Operations liability coverage for a period of two years after acceptance of the work performed hereunder, with a combined single limit of not less than $2,000,000 for injury to any person or for damage to property in any one occurrence, including liability arising out of the use or ownership of motor vehicles. Such policies shall be in such form and shall be issued by such insurance company or companies as may be satisfactory to Owner. Contractor shall furnish Owner with insurance certificates as evidence of the above coverage which certificates shall confirm that the insurance policies providing the above coverage have been endorsed as follows:

1. Owner and Engineer are additional insureds under said Comprehensive Public Liability insurance policies and said policies are primary as to any loss to which the insurance coverage provided thereby is applicable without right of contribution from any insurance otherwise maintained by Owner or Engineer.

2. The liabilities assumed by Contractor under the provisions of Article 13, "Indemnity" or Exhibit "C", are covered thereby.

3. Thirty (30) days' written notice of cancellation or change will be given, care of Insurance Department of Kaiser Engineers, Kaiser Center, Oakland, California, 94666, before any cancellation of or change in the policy will be effective.

PART II

Owner shall purchase and maintain at no cost to Contractor, Builder's All Risk Insurance covering physical damage to the Work being performed under this Contract, including the interest of the contractor therein. A Specimen copy of this Builder's All Risk Insurance policy is attached as Part III of this Exhibit "D". The Builder's All Risk Insurer will pay the cost of repairing or replacing damage to the Work, including Contractor's interest therein, in accordance with the provisions of said Builder's All Risk Insurance policy. Contractor shall comply with all requirements of the Builder's All Risk Insurance policy. Excepting for reimbursement by the Insurer for repair or replacement costs under said Builder's All Risk Insurance policy Contractor is fully responsible for the Work in accordance with the provisions of Article 23 of General Conditions for Contracts, Exhibit "C".

Contractor shall not purchase or maintain insurance duplicating the insurance being furnished by the Owner in accordance with the provisions of the Part II of Exhibit "D" and the compensation to the Contractor for the Work is not to include any factor representing the cost of such insurance.

Contractor shall give immediate notice to Owner of any occurrence causing loss or damage to its work which occurrence may give rise to a claim under the Builder's all Risk Insurance policy and Contractor shall furnish the Insurer in a timely fashion all documentation required under the policy for the settlement of any claim.

Mr. Smith stated in his deposition that he was an assistant manager of the Casualty Dept. of the San Francisco office of Johnson and Higgins and that Johnson and Higgins is the insurance brokerage firm which represented UNC in its purchase of the insurance policy from Mission. The following excerpts from Mr. Smith's deposition are pertinent to his understanding of the insurance policy:

A. My interpretation of this particular clause—and this is the errors and omissions of or deficiency in design—is that it is generally what we would call a third party—subject for a third party type coverage, a liability coverage, not subject for this policy which is a first party coverage. The policy is not intended to pick up the error in design or error in plant specifications of the contract, and generally it dovetails with whatever contract Mr. X [the owner] has made with Mr. Y [the contractor].

Q. How would it dovetail with that?

A. Well, that particular contract would probably require, say, the contractor to provide evidence of insurance that this is covered under his own insurance program.

Q. Under the contractor or subcontractor's liability policy?

A. Yes.

Q. Is what you were saying that the purpose of this exclusion H is that if a contractor subcontractor or materialman or engineer or anybody else were negligent in constructing or designing some aspect of the plant, any loss resulting from that should go against that person's liability carrier and not against the builder's risk policy?

A. Well, I don't know what you mean by the word "negligent," but as regards the plant specifications and the type of material they put in the building, yes.

Q. So it would be a question of which insurance policy you would look to?

A. Definitely.

Q. And you are saying that in the case of the things describe in exclusion H, error, omission or deficiency in design,

etc., it's that those are generally under-stood to be items which should be covered by the liability policy of the person whose error or omission or deficiency it was?

A. I would think so.

Q. Now, I want you to read over, if you would, what is Exhibit D. This is the National Tank subcontract, but the same Exhibit D applies to all the various sub-contracts to of the various subcontrac-tors of the Churchrock Mill. You don't need to read it aloud but just read it over. (Witness complies.)

Q. Mr. Smith, have you had a chance to review Exhibit D to the National Tank subcontract?

A. I have reviewed it.

Q. Is that a pretty standard type of arrangement with respect to providing insurance coverage for construction projects like this?

A. I would think so.

Q. Okay. Now, in view of this Exhibit D, what is your understanding as be-tween a builder's risk carrier and a sub-contractor's liability carrier; which, if ei-ther of the carriers, would be responsible for providing insurance coverage in a case in which the subcontractor has been required to pay damages arising out of that subcontractor's negligence or defi-ciency in the way that the subcontract work was performed?

A. In my estimation, I would say the subcontractor's liability policy.

Mr. Smith also testified that the purpose of including subcontractors as insured un-der Mission's builders risk policy "as their interests may appear" was to provide pro-tection against casualty damage to property of such subcontractors on the job site, and was not intended to provide coverage to such subcontractors for damages arising out of the negligence of such subcontractors.

In accord with Mr. Smith's testimony as to the intent of UNC in drafting the Build-er's Risk policy is the testimony of A. Kent Kuster, a representative of Mission, the oth-er party to the agreement.

With respect to the meaning of the quali-fication, Mr. Kuster testified as follows:

Q. Now, I'm looking at form number 1010, which is entitled "Builder's Risk Insurance," and it designates the insured as United Nuclear Corporation, and each contractor and/or subcontractor and/or materialman, as their interests may ap-pear. Are those persons the named in-sured in both of these policies?

A. As their interests may appear.

Q. And you, as the underwriter for Syre and Toso, understood what by that? What did you understand by that.

$$*\quad*\quad*\quad*\quad*\quad*$$

A. My opinion is that, from time to time, contractors and subcontractors may have property on site which will eventu-ally become part of the construction project, and it is our intent to insure those items they may have on site, a stack of lumber, etc.

The evidence in the record shows there is a lack of agreement concerning the status of Builders as insureds. The trial court's grant of summary judgment against Mis-sion on the issue of their cross-claims against Builders was improper, because there are genuine issues of material fact as to whether Builders are insureds under the risk insurance policy. We have found ambi-guities in the insurance policy as a matter of law. The extrinsic evidence shows no agreement as to the intent of the parties.

We hold that paragraphs 1, 7, and 10 H of the insurance policy in question are ambigu-ous.

The case is remanded for a factual deter-mination as to the status of Builders under the insurance policy. *Atlas v. General Builders; Walters v. Hastings*, 84 N.M. 101, 500 P.2d 186 (1972).

The judgment of the trial court is re-versed and the case is remanded for pro-ceedings consistent with this opinion. Ap-pellate costs shall be paid by Builders.

IT IS SO ORDERED.

NEAL, J., concurs.

DONNELLY, J., concurs in part and dis-sents in part.

DONNELLY, Judge (concurring in part and dissenting in part).

Two issues are raised in this interlocutory appeal. The first is whether the trial court erred in granting summary judgment in favor of National Tank and Pipe Company, Inc., (National) and M. M. Sundt Construction Company, Inc., (Sundt) and dismissing the cross-claim of defendant Mission Insurance Company (Mission) which seeks subrogation against Sundt and National. The second issue asserted on this appeal is whether the trial court erred in denying Mission's motion for summary judgment against National and Sundt, and refusing to dismiss their counterclaims against Mission. I dissent from the majority opinion's disposition of the first issue and concur in part in the disposition of the second.

This litigation had its genesis in the suit by United Nuclear Corporation against National, Sundt, and Mission for damages which occurred to structures built by defendants at plaintiff's uranium mill, near Churchrock, New Mexico, and seeking insurance proceeds for damage stemming from alleged negligent construction by defendants. Defendant Mission cross-claimed against defendants Sundt and National seeking subrogation against the co-defendants for the amount of any monies it may be required to pay plaintiff resulting from any losses covered under its insurance policy for any errors, defects or improper workmanship for which Sundt and National were determined to be responsible.

Mission filed a motion for summary judgment on the cross-claims against it brought by Sundt and National. The trial court denied such motion and Mission has also filed an interlocutory appeal as to that order.

Sundt and National (Builders) moved to dismiss Mission's cross-claims against them on the ground that an insurance company cannot be subrogated against a co-insured under a builders risk insurance policy for reimbursement of any monies it has to pay another insured under the same policy.

It is undisputed that Sundt and National are insured parties under the policy of insurance issued by Mission to United Nuclear Corporation. The nexus of the dispute between Mission, National and Sundt is the extent of the coverage under the policy of insurance and the alleged ambiguity in the policy concerning the extent of coverage. Mission asserts that Sundt and National are insured under the policy only for losses to their own property, and that they are not insured under such policy for any liability defendants may be adjudicated to have to plaintiff for negligence or breach of contract arising out of the construction project. Plaintiff agreed pursuant to contracts with Sundt and National to obtain a builder's risk insurance policy covering physical damage to the work including defendants' interests in the work being performed under the contract. It is also undisputed that the cover sheet of the policy of insurance issued by Mission, listed as insured "each contractor * * * subcontractor * * * or material men as their interests may appear * * *."

The trial court, in a carefully articulated memorandum opinion, granted summary judgment in favor of Sundt and National on Mission's cross-claim for subrogation. The trial court's ruling was predicated in part on recognition of the general rule that no right of subrogation arises in favor of an insurer against its own insured. The court also denied Mission's motion for summary judgment against Sundt and National.

### A) Sundt and National's Claim of Summary Judgment:

The majority opinion finds the contract of insurance to be ambiguous and reverses the trial court's order granting summary judgment with instructions to interpret the ambiguous provisions of the policy and to determine the extent of insurance coverage intended under the contract of insurance.

This disposition fails to address a major basis relied upon by the trial court in its order granting summary judgment against Mission on its cross-claim, i.e., that an insuror has no legal right of subrogation against an insured party under a contract of insurance. This issue is a matter of first

impression in this jurisdiction and should be dispositive of appellant's cross-claim on this appeal.

Under the facts herein this is not a case where there is an issue of whether or not there is any coverage, instead it embodies an issue as to what was the extent of insurance coverage.

The trial court's dismissal of the insurer's counterclaim for subrogation against Sundt and National is consistent and follows the rule recognized in a majority of jurisdictions that an insurer may not be subrogated against a contractor who is insured against damage to his own property under a builder's risk policy, even though the subcontractor's negligence may have resulted in a loss to another co-insured.

In *South Tippecanoe School Building Corp. v. Shambaugh & Son, Inc.*, 395 N.E.2d 320 (Ind.Ct.App.1979), the court quoted with approval from *Morsches Lumber v. Probst*, 388 N.E.2d 284 (Ind.Ct.App.1979), stating:

"[A]n agreement to insure is an agreement to provide both parties with the benefits of insurance. Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one who is a part to a contract agrees as part of his or its duties to provide insurance, that the insurance will protect both of them regardless of the cause of the loss (excepting, of course, wanton and willful acts) * * *."

\*      \*      \*      \*      \*      \*

Our statements here and * * * in *Morsches* are consistent with the weight of authority from other jurisdictions which holds that a builder's risk insurer is not entitled to subrogate against one whose interests are insured even though the party's negligence may have occasioned the loss, in the absence of design or fraud. Though the cases are many, we highlight excerpts but from these few we think representative of the majority and better reasoned, and with which we are now aligned: *Baugh-Belarde Construction Co. v. College Utilities Corp.*, 561 P.2d 1211 (Alaska 1977); *St. Paul Fire and Marine Insurance Co. v. Murray Plumbing and Heating Corp.*, 65 Cal. App.3d 66, 135 Cal.Rptr. 120 (1976); *Board of Education v. Hales*, 566 P.2d 1246 (Utah 1977); *Midwest Lumber Co. v. Dwight E. Nelson Construction Co.*, 188 Neb. 308, 196 N.W.2d 377 (1972); and, *Commerce and Industry Insurance Co. v. Orth*, 254 Or. 226, 458 P.2d 926 (1969).

In *South Tippecanoe*, the court observed that there are numerous considerations which violate public policy in permitting subrogation by an insurer against an insured party under a policy of insurance. Quoting in part *Baugh-Belarde, supra*, the court noted:

'We base our decision on several policy considerations. First, a severe conflict of interest would exist if an insurer were permitted to recover from one of its own insureds. [A]n insured * * * [is] under an implied duty to cooperate with its insurer in * * * any loss covered under the policy * * *. [The insurer] could use [the insured's] [c]ooperation in the investigation of the loss to build a liability case against the insured subcontractor. Such a conflict of interest would result in a breach of the fiduciary relationship between the insurer and its insured. * * * A second policy reason for not permitting a builder's risk insurer to subrogate against its insured, regardless of the extent of the insured's property in the construction project, is reduction of litigation. * * * Our third policy consideration concerns the tremendous burden which would be placed on subcontractors * * * if a builder's risk insurer were permitted to recover against its own insured. * * * All three of these policy problems can be avoided by viewing the builder's risk policy as a single policy which protects each insured against his own negligence.'

The majority rule proscribing a right of subrogation on the part of an insurer against an insured party is also followed in *St. Paul Fire & Marine Insurance Co. v. Murray Plumbing and Heating Corp.*, 135

Cal.Rptr. 120, 65 Cal.App.3d 66 (1976), which states:

> [T]he bulk of authority elsewhere establishes the principle that an insurer may not subrogate against a coinsured of its subrogor. We see no reason not to follow this line of authority particularly since the logic and equities would seem to support such a rule. As was said in *Home Insurance Company v. Pinski Brothers, Inc.* (1972), 160 Mont. 219, 500 P.2d 945 at 949:

> 'To permit the insurer to sue its own insured for a liability covered by the insurance policy would violate * * * basic equity principles, as well as violate sound public policy. * * *

> No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to rights of the insurer against third persons to whom the insurer owes no duty. 16 Couch on Insurance 2d, § 61:133; * * *.'

The majority of jurisdictions which have examined the question whether an insurance company who has extended coverage to an insured party may be subrogated against their own insured have consistently held that an insurer, upon the payment of a loss to one insured under its policy, cannot as subrogor recover the amount paid from a co-insured under the same policy even though the latter's negligence may have occasioned the loss, in the absence of fraud or intentional conduct on the latter's part. *General Insurance Co. of America v. Stoddard Wendle Ford Motors,* 67 Wash.2d 973, 410 P.2d 904 (1966); *Transamerica Insurance Co. v. Gage Plumbing and Heating Co.,* 433 F.2d 1051 (10th Cir. 1970); *St. Paul Fire & Marine Insurance Co. v. Murray Plumbing and Heating Corp., supra; Harvey's Wagon Wheel Inc. v. MacSween,* 606 P.2d 1095 (Nev.1980).

The trial court correctly granted summary judgment dismissing Mission's cross-claim against Sundt and National. Summary judgment is proper where the moving party is entitled to judgment as a matter of law. N.M.R.Civ.P. 56(c), N.M.S.A.1978;

*Worley v. United States Borax and Chemical Corp.,* 78 N.M. 112, 428 P.2d 651 (1967); *Institute for Essential Housing, Inc. v. Keith,* 76 N.M. 492, 416 P.2d 157 (1966); *Harvey's Wagon Wheel, Inc. v. MacSween, supra.*

By reversing the trial court and remanding for determination of the extent of insurance coverage of Sundt and National under the builder's risk policy, the majority decision places New Mexico in the camp of those jurisdictions which follow the minority rule and which permits an insuror to be subrogated against a co-insured. *See Public Service Co. of Oklahoma v. Black & Veatch Consulting Engineers,* 328 F.Supp. 14 (N.D.Okl.1971); *Paul Tishman Co. v. Carney & Del Guidice, Inc.,* 36 App.Div.2d 273, 320 N.Y.S.2d 396 (1971); *Turner Construction Co. v. John B. Kelly Co.,* 442 F.Supp. 551 (E.D.Pa.1976).

Since under the majority rule cited above, an insurer has no right of subrogation, absent fraud or intentional conduct, against an insured party, it logically flows that the trial court's order denying Mission's motion for summary judgment was also correct.

B) *Mission's Claim for Summary Judgment:*

Mission's motion for summary judgment was aimed at dismissal of the cross-claims of National and Sundt which contend that Mission is liable for all claims asserted by U.N.C. against National and Sundt in this suit. The insurance policy is ambiguous as to what the extent and magnitude of coverage is under the policy as to Builders. Further fact finding as to the intent of the parties on this issue is necessary. This issue should be vacated and remanded to receive extrinsic evidence on the question as to the precise extent of Mission's coverage, under the policy. I therefore concur in the majority opinion's result as to that portion of the trial court's judgment.

I would, however, affirm the order of the trial court granting summary judgment against Mission on its cross-claim against Sundt and National and which held Mission is precluded from subrogation rights against Sundt and National.