877 P.2d 38

STATE of New Mexico, ex rel., the RE-GENTS OF NEW MEXICO STATE UNIVERSITY, New Mexico State University, and Aetna Casualty & Surety Company, Plaintiffs–Appellants,

v.

SIPLAST, INC., Defendant–Appellee.

No. 21457.

Supreme Court of New Mexico.

June 6, 1994.

Pelton & O'Brien, Daniel J. O'Brien, Albuquerque, for appellants.

Butt, Thornton & Baehr, P.C., James P. Lyle, Albuquerque, for appellee.

## OPINION

BACA, Justice.

Plaintiffs–Appellants, The Regents of New Mexico State University, New Mexico State University ("NMSU"), and Aetna Casualty & Surety Company ("Aetna"), appealed when the trial court granted a motion for summary judgment in favor of Defendant–Appellee, Siplast, Inc. ("Siplast"). The action arose out of damages sustained to the Pan–American Center located at NMSU in Las Cruces due to a fire that occurred while the building was being re-roofed. NMSU was covered by a policy issued by Aetna that covered all of the property that it owned. Aetna covered the damage to the Pan–American Center and then filed suit against Van Winkle Roofing, Inc. ("Van Winkle"), Ronnie Van Winkle, United Construction Products, Inc., Tectum, Inc. and Siplast to recover the amount it paid

out for the damage caused by the fire. All of the defendants subsequently filed motions for summary judgment on the grounds that as co-insureds under the Aetna policy, Aetna could not subrogate against them, and that the waiver clause in the re-roofing contract was a contractual bar to suit against them. Siplast was the only defendant remaining when the trial court entered its order granting summary judgment. On appeal, we address four issues: (1) Whether the trial court's decision to change its ruling on Siplast's motion for summary judgment was an abuse of discretion; (2) whether summary judgment was precluded because a material issue of fact existed as to whether Siplast was a subcontractor, a sub-subcontractor, an agent, or an employee of NMSU; (3) whether Siplast was a co-insured under the policy; and (4) whether an insurance company may subrogate against its insured under New Mexico law. We review this case pursuant to SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), and affirm.

## I

On May 11, 1987, NMSU entered into a contract with Van Winkle for the re-roofing of the Pan–American Center. Siplast provided various materials which were used by Van Winkle for the re-roofing project and performed inspection services to the extent necessary to provide Siplast's ten-year guarantee to Van Winkle. On August 11, 1987, a fire caused damage to the Pan–American Center, both to the re-roofing work as well as to other areas of the building. Aetna alleged in its complaint that the negligence of Van Winkle, Siplast, and the other defendants caused the fire. Aetna paid out NMSU's claim for damage to the building and subsequently filed suit against Siplast for subrogation, claiming that Siplast was not covered under the Aetna policy. Siplast filed a motion for summary judgment, claiming that because it was a subcontractor within the meaning of the waiver clause in the contract between Van Winkle and NMSU, the waiver clause constituted a contractual bar to the suit. Siplast also claimed that, as an insured under the Aetna policy, Aetna could not subrogate against it. The trial court denied Siplast's motion, reasoning that

NMSU had waived any claim for damages by fire to the re-roofing project against contractors, subcontractors, and sub-subcontractors only to the extent covered by property insurance obtained pursuant to the re-roofing contract. The trial court also concluded that Siplast could raise the issue of whether it was subcontractor as a motion for directed verdict at the close of plaintiff's case at trial.

Thereafter, Siplast filed a motion to reconsider summary judgment. Fourteen months later the district court, with a different judge presiding over the case, granted Siplast's motion for summary judgment, concluding that, as a matter of law, Siplast was a subcontractor, a sub-subcontractor, an agent, or an employee of NMSU, and was, therefore, an insured under the policy with Aetna. Aetna and NMSU appeal from this order.

## II

We first address whether the trial court's decision to change its ruling on Siplast's motion for summary judgment was an abuse of discretion. Aetna contends that the trial court abused its discretion by reversing the prior ruling denying Siplast's motion for summary judgment. We disagree.

In our recent opinion in *Tabet Lumber Co. v. Romero* we decided this identical issue and held that

[t]he district court "has the inherent authority to reconsider its interlocutory order, and it is not the duty of the [trial court] to perpetuate error when it realizes it has mistakenly ruled." The grant or denial of a motion for summary judgment is an interlocutory order, and, therefore, the [trial court] could properly reconsider its previous ruling notwithstanding the fact that a different judge had issued that ruling.

117 N.M. 429, 431, 872 P.2d 847, 849 (1994) (citations omitted).

The trial court's order denying summary judgment was not a final order and, hence, was subject to later reversal by a different judge ruling on the motion for reconsideration.

### III

We next address whether the trial court correctly granted summary judgment in favor of Siplast. Summary judgment is properly granted in a case when no genuine issues of material fact are presented and the moving party is entitled to judgment as a matter of law. SCRA 1986, 1–056(C) (Repl. Pamp.1992); *New Mexico. Physicians Mut. Liab. Co. v. LaMure,* 116 N.M. 92, 100, 860 P.2d 734, 742 (1993). If the facts are undisputed and only a legal interpretation of the facts remains, summary judgment may be properly granted. *Koenig v. Perez,* 104 N.M. 664, 665, 726 P.2d 341, 342 (1986).

Aetna argues that the question whether Siplast was a contractor, a subcontractor, or a sub-subcontractor presents a genuine issue of material fact and, therefore, summary judgment was improperly granted. We cannot agree. The facts are undisputed that Siplast entered into an agreement with Van Winkle, the contractor, to supply materials with a ten-year guarantee for the re-roofing project. Siplast also agreed to provide "specifications, instructions and recommendations for the application and installation" of the materials supplied by it. Two of Siplast's representatives conducted numerous job site visits to ensure that Van Winkle employees were correctly using the materials and to assist with any problems. From July 22 through October 1, 1987, Siplast's representatives conducted inspections, consultations, and instructional work at the site on at least twelve different days. The contracts between NMSU and Van Winkle, Aetna and NMSU, and Van Winkle and Siplast were also before the trial court. The trial court did not have to determine any genuine issue of fact; rather, the court was only required to conclude, as a matter of law, whether Siplast was a subcontractor or a materialman. Thus, we determine whether the trial court correctly concluded that Siplast was entitled to judgment as a matter of law. Section 11.3.6 of the construction contract provided for a waiver of all rights against each other by the owner, contractor, subcontractors, and sub-subcontractors "for damages caused by fire ... to the extent covered by Insurance obtained." NMSU purchased and maintained property insurance with Aetna for the entire project. The policy with Aetna covered "contractors', subcontractors' and sub-subcontractors' interests in property in the course of construction, alteration or repair and when completed, to the extent of Insured's liability therefor. This coverage does not extend to ... tools, machinery or equipment."

A subcontractor on the re-roofing project was defined in the construction contract as: "a person or entity who has a direct contract with the Contractor to perform any of the Work at the site." Aetna contends that because Siplast "merely delivered materials to the site and was under no 'direct contract' to 'perform work at the site,' Siplast was not [a] subcontractor as defined by the contract" but was only a materialman. Hence, Aetna argues that Siplast was not covered under the Aetna policy. The undisputed facts, however, directly contradict these assertions.

Siplast not only supplied roofing materials to Van Winkle but, pursuant to its contract with Van Winkle, gave instructions and supervised the use of its materials by Van Winkle's employees. Siplast representatives were on the job site at least twelve different times, usually for at least two hours at a time. During the times the Siplast representatives were on the site, they provided instruction and answered questions regarding the installation of Siplast's materials. Siplast easily falls into the "subcontractor" definition provided by the contract.

The trial court correctly concluded that Siplast was a subcontractor under the definition provided for in the construction contract and under our current case law. In *Vulcraft v. Midtown Business Park, Ltd.,* 110 N.M. 761, 764, 800 P.2d 195, 198 (1990), this Court rejected the line of cases requiring that "work must be done at the construction site for a party to qualify as a subcontractor." Instead, we adopted the rule enunciated in *Theisen v. County of Los Angeles,* 54 Cal.2d 170, 5 Cal.Rptr. 161, 352 P.2d 529 (1960) (in bank), that

> "one who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord

with the plans and specifications by which the prime contractor is bound has 'charge of the construction' of that part of the work of improvement and is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building."

*Id.* 5 Cal.Rptr. at 169, 352 P.2d at 538. We stated that "[t]he factor distinguishing a subcontractor from a materialman is performance. A subcontractor cannot merely supply goods, but must perform some act, using its skill and labor, to conform some material to contract specifications."

*Vulcraft,* 110 N.M. at 766, 800 P.2d at 200.

■ Following this rule, this Court set out four factors that courts are to consider when distinguishing between a subcontractor and a materialman. These factors are not mandatory, but are criteria designed to assist the court in determining the status of a party. First, "[t]o qualify as a subcontractor, the party must perform some portion of the work for which the owner originally contracted. It is not necessary that the work be done at the construction site, but work must be performed to the contract's plans and specifications." *Id.* Second, "[t]he work performed must ... be substantial." *Id.* Third, the court should ascertain whether the custom in the trade considers the materials supplied by the party to be common in the trade or prepared to conform to specifications of the contract. *Id.* at 767, 800 P.2d at 201. Finally, the intent of the parties may also be a factor considered by the court. *Id.* Here, Siplast provided evidence that it met at least two of the factors. Siplast performed a portion of the work originally contracted for by providing the specified materials and assisting in their installation according to the specifications of the contract. Siplast also performed a "substantial" amount of the contracted work on the project by providing the materials specified by NMSU and ensuring their proper installation according to the specifications of the contract. Although we are unable to determine whether Siplast met the other factors enunciated in *Vulcraft,* we are satisfied that at least two established that Siplast was a subcontractor. Thus, we hold the trial court correctly concluded that

Siplast was a subcontractor on the Pan–American Center re-roofing project.

## IV

Aetna further argues that even if Siplast was a subcontractor on the project, it was not a co-insured and even if Siplast was a co-insured under the policy, Aetna had the right to subrogate against it under New Mexico law. We discuss each of these contentions in turn.

### A.

Aetna claims that the language of the insurance policy is unambiguous and does not insure Siplast for its product nor for any event flowing from the application of its product on the job site. We cannot agree. NMSU was required to acquire builder's risk insurance on the construction project. Section Two of the "Property Coverage Form" provides:

> [T]he insurance provided by this form covers the following property and interests:
>
> . . . .
>
> F. contractors', subcontractors' and subsubcontractors' interests in property in the course of construction, alteration or repair and when completed, to the extent of Insured's liability therefor.

We have already determined in Section III of this opinion that Siplast was a subcontractor under the construction contract and under New Mexico law. As a subcontractor, Siplast was insured under this policy.

### B.

■ Aetna further contends that even if Siplast is a co-insured under the policy, Aetna may subrogate against it under New Mexico law. This issue has never been specifically determined by New Mexico courts. Although the Court of Appeals suggested in *United Nuclear Corp. v. Mission Ins. Co.,* 97 N.M. 647, 652–54, 642 P.2d 1106, 1110–12 (Ct.App.1982), that New Mexico would follow the minority of jurisdictions and hold that insurance companies may subrogate against their insureds in certain instances, we choose to follow the majority of jurisdictions and

recognize the rule that "an insurer may not be subrogated against a contractor who is insured against damage to his own property under a builder's risk policy, even though the subcontractor's negligence may have resulted in a loss to another co-insured." *Id.* at 658, 642 P.2d at 1117 (Donnelly, J., dissenting).[1] The reasoning behind the majority rule is:

> With agreements to insure, the risk of loss is not intended to be shifted to one of the parties; it is intended to be shifted to an insurance company in return for a premium payment. Neither party intends to assume a potential liability; rather both are demonstrating "normal" business foresight in avoiding liability and allocating it to an insurer. . . .
>
> Thus, we believe the better reasoning is found in those cases holding that an agreement to insure is an agreement to provide both parties with the benefits of insurance. Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one who is a party to a contract agrees as part of his or its duties to provide insurance, that the insurance will protect both of them regardless of the cause of the loss (excepting, of course, wanton and willful acts). If that were not their intent, each would provide his or its own insurance protection and there would be no need for the contract to place the duty on one of them.

*Morsches Lumber, Inc. v. Probst,* 180 Ind. App. 202, 388 N.E.2d 284, 287 (1979).

■ Here, in the re-roofing contract, the parties agreed that recovery for damage to the project from one of the enumerated perils was to be limited to the property insurance required by Section 11.3.1, which included the interests of the owner, the contractor, the subcontractors, and the sub-subcontractors. Furthermore, under Section 11.3.6 the owner and the contractor waived their rights for damages covered by the property insur-

ance, except rights to proceeds. In addition, the owner or the contractor was to require similar waivers by the subcontractors and the sub-subcontractors. "The construction contract here explicitly required that the property insurance procured by [NMSU] include the interests of the various contracting parties. That the protection thereby afforded was intended to constitute the exclusive source for redress of damages sustained is buttressed by the waiver provisions" contained in the construction contract. *South Tippecanoe Sch. Bldg., Corp. v. Shambaugh & Son, Inc.,* 182 Ind.App. 350, 395 N.E.2d 320, 327 (1979). Additionally, the Aetna policy provided a list of causes of physical loss which were specifically excluded from coverage. The negligence of a contractor or subcontractor was not included in this list. "[I]t is well established that where negligence causes a loss, that loss is considered to be fortuitous and within the coverage of an all risks policy unless the policy specifically excludes it from coverage." *Baugh–Belarde Constr. Co. v. College Utils.,* 561 P.2d 1211, 1215 (Alaska 1977) (footnote omitted). In fact, the Aetna policy specifically stated in Section Four that "[t]his form insures against all perils causing loss, except perils specifically excluded in this form." The parties to the construction contract were limited in recovery for property damage to the proceeds of the insurance required to be carried under the contract.

Many policy considerations support the rule we adopt today prohibiting subrogation against an insured. First, we wish to avoid the conflict of interest that would occur if an insurer were permitted to recover from one of its own insureds. *Id.* at 1214. Because Siplast was an insured, it was under a duty to cooperate fully with its insurer in the insurer's investigation of the loss. This duty of cooperation required Siplast to answer Aetna's investigator's questions and to permit inspection of its property and equipment

1. *See e.g., Transamerica Ins. Co. v. Gage Plumbing & Heating Co.,* 433 F.2d 1051 (10th Cir. 1970); *Baugh–Belarde Constr. Co. v. College Utils.,* 561 P.2d 1211 (Alaska 1977); *St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.,* 65 Cal.App.3d 66, 135 Cal.Rptr. 120 (1976); *United States Fire Ins. Co. v. Beach,* 275 So.2d 473 (La.1973); *Independent Sch. District No. 877 v. Loberg Plumbing & Heating Co.,* 266 Minn. 426, 123 N.W.2d 793 (1963); *Home Ins. Co. v. Pinski Bros., Inc.,* 160 Mont. 219, 500 P.2d 945 (1972); *Factory Ins. Ass'n v. Donco Corp.,* 496 S.W.2d 331 (Mo.Ct.App.1973); *Board of Educ. v. Hales,* 566 P.2d 1246 (Utah 1977).

on the site. The insurer, Aetna, could then use the information given to it under the duty of cooperation to build a case against its own insured. The Montana Supreme Court recognized this danger in *Home Ins. Co. v. Pinski Brothers, Inc.*, 160 Mont. 219, 500 P.2d 945, 949 (1972):

> To permit the insurer to sue its own insured for a liability covered by the insurance policy would violate these basic equity principles, as well as violate sound public policy. Such action, if permitted, would (1) allow the insurer to expend the premiums collected from its insured to secure a judgment against the same insured on a risk insured against; (2) give judicial sanction to the breach of the insurance policy by the insurer; (3) permit the insurer to secure information from its insured under the guise of policy provisions available for later use in the insurer's subrogation action against its own insured; (4) allow the insurer to take advantage of its conduct and conflict of interest with its insured; and (5) constitute judicial approval of a breach of the insurer's relationship with its own insured.

A second policy consideration for not allowing builder's risk insurers to subrogate against their insureds is reduction of litigation. *Baugh–Belarde*, 561 P.2d at 1215. The cost of litigating these claims would ultimately fall on the general public in the form of increased insurance premiums. This leads to a third policy consideration—the higher construction costs that would also result because of the cost of litigation and because each subcontractor on a construction project would be forced to purchase its own liability insurance for loss to the entire project at higher premiums. This would result in increased bids by subcontractors, increasing the entire cost of a construction project. *Id.* We agree with the Alaska Supreme Court that "these policy problems can be avoided by viewing the builder's risk policy as a single policy which protects each insured party against his own negligence. The entire loss should be borne by the insurer which has accepted one premium covering the entire property." *Id.*

Accordingly, we conclude that Siplast was entitled to summary judgment as a matter of law and that the trial court was correct in ruling that Aetna could not recover through subrogation from a subcontractor which was insured under its builder's risk policy. The order of the trial court is **AFFIRMED.**

**IT IS SO ORDERED.**

MONTGOMERY, C.J., and RANSOM, J., concur.